**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

BRIAN DENNIS SHANNON,
            *Petitioner-Appellant,*

            v.

ANTHONY NEWLAND, Warden,
            *Respondent-Appellee.*

No. 03-16833

D.C. No.
CV-01-03275-MJJ

OPINION

Appeal from the United States District Court
for the Northern District of California
Martin J. Jenkins, District Judge, Presiding

Argued and Submitted
April 11, 2005—San Francisco, California

Filed June 8, 2005

Before: Robert R. Beezer, Diarmuid F. O'Scannlain, and
Andrew J. Kleinfeld, Circuit Judges.

Opinion by Judge O'Scannlain

**COUNSEL**

Donald M. Horgan, Riordan & Horgan, San Francisco, California, argued the cause and filed briefs for the petitioner; Dennis P. Riordan was on the briefs.

Juliet B. Haley, Attorney General's Office, San Francisco, California, argued the cause and filed a brief for the respondent; Bill Lockyer, Robert R. Anderson, Gerald A. Engler, and Peggy S. Ruffra were on the brief.

---

**OPINION**

O'SCANNLAIN, Circuit Judge:

We must decide whether a California prisoner's petition for writ of habeas corpus is timely when it is filed long after his conviction but shortly after a decision by the California Supreme Court clarifying the state's criminal law in a way potentially favorable to his federal constitutional claim.

I

In October 1993, Brian Shannon and his girlfriend, Kimberly Stack, began to argue heatedly in the living room of Shannon's home. Stack was killed by a shot from a handgun that Shannon kept on the premises. Evidence suggested that the couple had been struggling physically at the time of the shooting or shortly before. Shannon was charged with murder and convicted by a jury. The court sentenced him to fifteen years to life on that count, with an additional enhancement of four years for the use of a gun and sixteen months on a weapons possession charge to which Shannon pled *nolo contendere*.

Shannon appealed his conviction, arguing (among other

things) that the trial court had incorrectly instructed the jury. At Shannon's trial, the jury was instructed on the elements of second-degree murder, which consists, in California, of "the unlawful killing of a human being with malice aforethought." It was instructed that "malice" exists either when "there is manifested an intention unlawfully to kill a human being," or when the defendant intentionally performs an act which he knows is dangerous to human life.[1] It was instructed that murder is reduced to manslaughter if the defendant acted "upon the ground of sudden quarrel or in the heat of passion" and that "[t]o establish that a killing is murder and not manslaughter, the burden is on the People to prove beyond a reasonable doubt each of the elements of murder and that the act which caused the death was not done in the heat of passion or upon a sudden quarrel."

The parties do not dispute that all of the above instructions were accurate. Shannon's objection, rather, is to the court's instructions defining the lesser offense of voluntary manslaughter. The court instructed the jury that "[e]very person who unlawfully kills another human being without malice aforethought but with an intent to kill, is guilty of voluntary manslaughter," and that voluntary manslaughter requires the prosecution to prove that "[t]he killing was done with the intent to kill." Shannon argued on appeal that the trial court erred in instructing the jury that *intent* to kill is required for a voluntary-manslaughter conviction. Instead, Shannon argued, voluntary manslaughter—like murder—can also be committed by acting with reckless disregard for human life.

The error was important, Shannon argued, for the following reasons. Murder requires either intent to kill or reckless disregard for life. If the killing is of the intent-to-kill variety, then

---

[1]The prosecution alleged that Shannon acted with malice aforethought because he intended to kill Stack or, in the alternative, behaved with wanton disregard for human life by brandishing a gun he knew was dangerous. The defense argued that the shooting was an accident.

the existence of "heat of passion" clearly reduces the charge to voluntary manslaughter. What happens, however, when the killing is of the reckless-disregard variety, but the defendant acted in the heat of passion? The crime should not be murder, because heat of passion negates malice; but it cannot be voluntary manslaughter under the trial court's instructions, because that crime requires actual *intent* to kill. Shannon thus argued that voluntary manslaughter must include reckless-disregard homicides as well as intentional ones and that the erroneous instruction could have led the jury to convict him of murder even had the prosecution failed to meet its burden to disprove heat of passion.

The California Court of Appeal rejected Shannon's claim in June 1996, opining that his "argument does make sense" but holding that it was bound by prior decisions of the California Supreme Court that included intent to kill as an element of voluntary manslaughter. *See People v. Shannon*, 46 Cal. App. 4th 1365, 1370 (Ct. App. 1996). The California Supreme Court denied review on October 17, 1996.

Because Shannon did not petition the U.S. Supreme Court for certiorari, his conviction became final, for purposes of the statute of limitations for a habeas petition under the Antiterrorism and Effective Death Penalty Act ("AEDPA"), 28 U.S.C. § 2244(d)(1), when the period for filing such a petition elapsed on January 17, 1997. *See Bowen v. Roe*, 188 F.3d 1157, 1159-60 (9th Cir. 1999). He sought no federal habeas relief at that time, and the standard limitations period of one year from the date of final judgment, 28 U.S.C. § 2244(d)(1)(A), therefore expired on January 17, 1998.

In June 2000, the California Supreme Court decided *People v. Lasko*, 999 P.2d 666 (Cal. 2000), holding that the standard voluntary manslaughter instruction was indeed incorrect under California law because actual intent to kill is not an element of the crime. *Id.* at 668. In August 2000, Shannon petitioned the California Court of Appeal for a writ of habeas

corpus based on *Lasko*. The Court of Appeal denied his petition without opinion and the California Supreme Court denied review in January 2001.

On August 27, 2001, Shannon filed a habeas petition in district court for the Northern District of California, arguing that the erroneous jury instruction violated his federal right to due process. The district court denied the petition as untimely and, in the alternative, on the merits. The district court denied Shannon's request for a Certificate of Appealability, but in December 2003, we granted a certificate and this appeal followed.[2]

## II

**[1]** A habeas petition by a person in custody pursuant to the judgment of a state court is subject to a one-year statute of limitations. *See* 28 U.S.C. § 2244(d)(1). The date on which the one-year period begins is the latest of four possible dates:

    (A)   the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

    (B)   the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

    (C)   the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

---

[2]We initially granted the certificate only as to the question of untimeliness, but subsequently expanded it to include the question whether the voluntary manslaughter instruction violated Shannon's constitutional rights.

(D)   the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

*Id.* Since direct review of Shannon's conviction ended in 1996 and he did not file this habeas petition until August 2001, his petition clearly is not timely under subsection (A). He argues, however, that the California Supreme Court's decision in *Lasko* constituted either, under subsection (B), the removal of an "impediment to filing an application created by State action," or, under subsection (D), the factual predicate of his claim. Alternatively, Shannon argues, the period between his conviction and the California Supreme Court's decision in *Lasko* should be equitably tolled. We consider these arguments in turn.[3]

A

Shannon first argues that the California Supreme Court's decision in *Lasko*, by confirming his contention that his jury instructions had been erroneous, removed a state-created impediment to the filing of his habeas petition and thus triggered a new one-year statute of limitations under 28 U.S.C. § 2244(d)(1)(B). He contends that the state appellate court's rejection of his appeal in June 1996 and the California Supreme Court's refusal to review that decision in October 1996 were state-created impediments to his ability to seek habeas relief. Before the California Supreme Court decided *Lasko* in 2000, federal courts would have been bound by the state appellate court's holding that the challenged jury instruction accurately stated California law. *See West v. Am. Tel. & Tel. Co.*, 311 U.S. 223, 237-38 (1940) (holding that federal courts must defer to an intermediate state court's interpreta-

---

[3]We review *de novo* the dismissal of a habeas petition on grounds of untimeliness. *See Delhomme v. Ramirez*, 340 F.3d 817, 819 (9th Cir. 2003). Legal determinations regarding equitable tolling are also reviewed *de novo*. *See Malcolm v. Payne*, 281 F.3d 951, 956 (9th Cir. 2002).

tion of state law, made in the very case under consideration, when the state supreme court has denied review). Thus, Shannon argues, he was "imped[ed]" from filing his habeas claim until the California Supreme Court finally corrected the lower California courts' error and clarified the elements of voluntary manslaughter in *Lasko*.

**[2]** We are not persuaded, however, that the state appellate court's decision was an "impediment" to Shannon's filing a habeas petition. He was free to *file* such a petition at any time. Shannon's real objection is that the state court's decision determined state law in a way that provided no legal basis for a federal habeas petition: since the state court held that the challenged instruction accurately defined voluntary manslaughter under California law, Shannon could not successfully argue in federal court that the instruction was so mistaken as to violate due process. But Shannon provides no support for the proposition that a state's determination of its own substantive law in a way that leaves a convict with no meritorious federal claim can constitute an "impediment" under § 2244(d)(1)(B), and so far as we can tell, none exists.

The limited case law applying § 2244(d)(1)(B) has dealt almost entirely with the conduct of state prison officials who interfere with inmates' ability to prepare and to file habeas petitions by denying access to legal materials. *See, e.g.*, *Whalem/Hunt v. Early*, 233 F.3d 1146 (9th Cir. 2000) (en banc); *Egerton v. Cockrell*, 334 F.3d 433 (5th Cir. 2003). A plurality of the Supreme Court has also suggested that the provision would apply if a "state court . . . refuse[d] to rule on a constitutional claim that ha[d] been properly presented to it." *Lackawanna County Dist. Att'y v. Coss*, 532 U.S. 394, 405 (2001) (plurality op. of O'Connor, J.). These cases comport with the plain meaning of the provision, which applies when a petitioner has been impeded from *filing* a habeas petition.

It is not surprising that § 2244(d)(1)(B) has not been interpreted as Shannon suggests, because the implications of his contention would be serious. Whenever a state court clarified its own substantive or procedural law, any prisoner convicted under the understanding of the state's legal standard or procedure previously prevailing in state courts—no matter how long ago he was convicted—would be free to file a federal habeas petition. The text of § 2244(d)(1)(B) cannot bear that construction, and we decline to adopt it.[4]

## B

**[3]** Shannon also argues that the California Supreme Court's decision in *Lasko* triggered a new one-year statute of limitations under 28 U.S.C. § 2244(d)(1)(D) by supplying the "factual predicate" for his federal constitutional claim. This argument is equally difficult to square with the statute's language. Section 2244(d)(1)(D) refers to a "factual" predicate; the California Supreme Court's decision in *Lasko*, however, clarified the law, not the facts. If a change in (or clarification of) state law, by a state court, in a case in which Shannon was not a party, could qualify as a "factual predicate," then the term "factual" would be meaningless.

At our instruction, the parties discussed at oral argument the implications of the Supreme Court's recent decision in *Johnson v. United States*, 125 S. Ct. 1571 (Apr. 4, 2005), for Shannon's claim of timeliness under § 2244(d)(1)(D). *Johnson* actually dealt with 28 U.S.C. § 2255, ¶6(4), the counterpart to § 2244(d)(1)(D) that applies to habeas-like motions by federal prisoners attacking their sentences. The two provisions are almost identical, though,[5] and the Supreme Court has

---

[4]Section 2244(d)(1)(B) also requires that the "impediment" be imposed "in violation of the Constitution or laws of the United States." Shannon does not explain how the pre-*Lasko* opinions of the California courts, interpreting the elements of voluntary manslaughter under California law, could violate the Constitution or federal laws.

[5]Section 2255, ¶6(4), provides for the one-year limitations period to begin on "the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence."

interpreted the statute-of-limitations provisions of § 2244 and § 2255 in concert with one another. *See, e.g.*, *Lackawanna County*, 532 U.S. at 402 (plurality op. of O'Connor, J.).

In *Johnson*, a federal prisoner's sentence had been enhanced because of his prior state convictions. When one of the state convictions was subsequently vacated by a state court, Johnson sought to challenge his federal sentence under § 2255. Since more than a year had elapsed since his federal conviction became final, Johnson relied on § 2255, ¶6(4). The Eleventh Circuit held that a state legal decision did not qualify as a "fact" under that provision. *See Johnson v. United States*, 340 F.3d 1219, 1223 (11th Cir. 2003). The Supreme Court, however, rejected that analysis, holding that a state-court order vacating a petitioner's state conviction does qualify as a "fact" under § 2255, ¶6(4)—and thus, doubtless, would also qualify as a "factual predicate" under § 2244(d)(1)(D).

**[4]** *Johnson* establishes that a state-court decision can, in some circumstances, qualify as a fact. There is, however, a crucial difference between *Johnson* and this case. In *Johnson*, the state-court decision in question was a decision in the petitioner's *own case*. It did not merely establish an abstract proposition of law; rather, it directly eliminated Johnson's legal status as a convict. That status was a fact used to enhance his sentence, just as the use of a gun or the quantity of narcotics sold are facts that can enhance a defendant's sentence. In this case, by contrast, the California Supreme Court's decision in *Lasko* was unrelated to Shannon's case and had no direct effect on his legal status.

The opinions in *Johnson* support this distinction. The majority noted that

> [w]e commonly speak of the "fact of a prior conviction," and an order vacating a predicate conviction is spoken of as a fact just as sensibly as the order enter-

> ing it. In either case, a claim of such a fact is subject to proof or disproof like any other factual issue.

*Johnson*, 125 S. Ct. at 1579-80 (citation omitted). By contrast, the California Supreme Court's clarification in *Lasko* of the elements of voluntary manslaughter under California law is *not* subject to "proof or disproof like any other factual issue." We would never, for example, ask a jury to decide whether a judicial decision had indeed changed a state's law in the relevant way, nor would the parties introduce evidence on the question.

The dissenting Justices disagreed with the majority's resolution of the case, but for all purposes relevant to Shannon's case they agreed with the majority. Joined by each of the other three dissenters, Justice Kennedy wrote:

> The Court is quite correct, in my view, to hold that the state-court order of vacatur itself is the critical fact which begins [AEDPA's] 1-year limitations period. It is an accepted use of the law's vocabulary to say that the entry or the setting aside of a judgment is a fact. An order vacating a judgment is a definite and significant fact of litigation history. So the Court is on firm ground to say a state judgment of vacatur begins the 1-year limitations period.

*Id.* at 1583 (Kennedy, J., dissenting) (citations omitted). The California Supreme Court's decision in *Lasko* is not, by contrast, a "significant fact of [Shannon's] litigation history."

**[5]** Thus, while the Court's decision in *Johnson* does establish that a state-court judgment can sometimes constitute a fact triggering a new limitations period under AEDPA, the language of both the majority and the dissent suggests that a state-court decision establishing an abstract proposition of law arguably helpful to the petitioner's claim does not constitute the "factual predicate" for that claim. Moreover, like Shan-

non's claim under § 2244(d)(1)(B), the construction of § 2244(d)(1)(D) that he urges would create a large loophole in AEDPA's scheme to promote finality. Whenever a state court announced a new interpretation or clarification of state law, that announcement would constitute the "factual predicate" for a federal habeas claim seeking to enforce the new ruling retroactively. But nothing in AEDPA suggests that it was meant to take away state courts' ability to handle as they see fit the always-thorny problem of the retroactivity of changes in substantive law.

## C

[6] Finally, Shannon argues that the time between his conviction and the California Supreme Court's decision in *Lasko* should be equitably tolled.[6] Equitable tolling is available only when "extraordinary circumstances beyond a prisoner's control make it impossible to file the petition on time." *Stillman v. Lamarque*, 319 F.3d 1199, 1202 (9th Cir. 2003). "Extraordinary circumstances exist when . . . wrongful conduct prevents a prisoner from filing." *Id.* (internal quotation marks omitted). Equitable tolling has been applied, for example, where the prison library was inadequate, *Whalem/Hunt v. Early*, 233 F.3d 1146, 1148 (9th Cir. 2000) (en banc); where the prisoner was denied access to his files, *Lott v. Mueller*, 304 F.3d 918, 925 (9th Cir. 2002); and where an attorney's egregious misconduct prevented timely filing, *Spitsyn v. Moore*, 345 F.3d 796, 801 (9th Cir. 2003).

---

[6]In his opening brief, Shannon argues for tolling the period from the time of his conviction until the California Supreme Court denied the state habeas petition he filed based on *Lasko*. The reply brief, however, refers to the allegedly tolled period as lasting only until the California Supreme Court's decision in *Lasko* itself. The tolling of either period would suffice to render his claim timely. If Shannon's claim had merit, the second formulation would be the accurate one (because it is *Lasko* that he claims ended the "prevent[ion]" of his filing a federal habeas petition).

**[7]** Each of the cases in which equitable tolling has been applied have involved *wrongful* conduct, either by state officials or, occasionally, by the petitioner's counsel. *See Stillman*, 319 F.3d at 1202 (9th Cir. 2003) ("Extraordinary circumstances exist when . . . wrongful conduct prevents a prisoner from filing." (internal quotation marks omitted)). Moreover, in each case, the misconduct has actually prevented the prisoner from preparing or filing a timely petition. Shannon's case meets neither of those criteria. He does not argue that the California courts acted "wrongful[ly]" as a matter of federal law by defining voluntary manslaughter as requiring intent prior to *Lasko*; and nothing prevented him from preparing and filing a habeas petition at any time. His argument, rather, is that the state court prevented him from *prevailing* on a federal habeas claim, because, before *Lasko*, the federal courts would have had to accept the California courts' understanding of their own law.

**[8]** Shannon's argument thus calls for an unprecedented extension of the principle of equitable tolling. We have stated, however, that "[e]quitable tolling is justified in few cases," and that "the threshold necessary to trigger equitable tolling [under AEDPA] is very high, lest the exceptions swallow the rule." *Spitsyn*, 345 F.3d at 799 (alteration in original). Moreover, just like Shannon's previous arguments, this argument would open the door for any state prisoner to file a habeas petition anytime a state court issues a clarification of state law. Such an interpretation cannot be squared with the goals of finality that are central to AEDPA. Shannon is not entitled to equitable tolling.

### III

Because Shannon's petition for writ of habeas corpus was untimely, the district court was correct to dismiss it. We need not reach—and take no position on—the merits of Shannon's constitutional claim. The judgment of the district court dismissing the petition as untimely is

**AFFIRMED**.