Affirmed by published opinion. Judge WILKINSON wrote the opinion, in which Chief Judge TRAXLER, and Judges NIEMEYER, MOTZ, KING, SHEDD, DUNCAN, AGEE, KEENAN, FLOYD, THACKER and HARRIS joined. Judge GREGORY wrote a dissenting opinion, in which Senior Judge DAVIS joined. Judge WYNN wrote a dissenting opinion. Judge DIAZ did not participate in this decision.

ON REHEARING EN BANC

WILKINSON, Circuit Judge:
Deangelo Whiteside pled guilty to a charge of possession with intent to distribute at least 50 grams of cocaine base, pursuant to 21 U.S.C. § 841(a)(1). Based upon his criminal record, he received the career offender enhancement under the United States Sentencing Guidelines and was sentenced to 210 months imprisonment. Whiteside now raises various claims on a 28 U.S.C. § 2255 petition arguing that his sentence should be vacated in light of United States v. Simmons, 649 F.3d 237 (4th Cir.2011) (en banc). In accordance with the relevant statutes, and in reliance upon Supreme Court and circuit precedent, we hold that the filing of the § 2255 petition was untimely, and we therefore affirm the district court’s dismissal of the petition. We decline to address the other claims raised by the petitioner.
I.
Starting in 2007, various drug dealers in Asheville, North Carolina, began identifying Deangelo Marquis Whiteside as a wholesale crack cocaine distributor in the area. Following an investigation, White-side was charged on July 22, 2009 in the Western District of North Carolina with one count of possession with intent to distribute more than 50 grams of cocaine base in violation of 21 U.S.C. § 841(a)(1). Prior to his plea agreement, the government notified Whiteside that it intended to pursue an enhanced penalty under 21 U.S.C. § 851 based on his 2002 North Carolina conviction for possession with intent to manufacture, sell, or deliver a controlled substance.
The presentence report determined that petitioner was accountable for 1951.9 net grams of powder cocaine and 468.3 net grams of cocaine base. Under 21 U.S.C. § 841(b)(1)(A), this quantity of drugs would have subjected him to a mandatory minimum of ten years in prison. The report detailed as well Whiteside’s lengthy criminal record, including numerous controlled-substances offenses, assault with a deadly weapon on a government officer, and additional counts of assault, hit and run, and resisting a public officer, which, independent of any career offender enhancement, established a criminal history category of V. See JA at 137. Whiteside did, however, qualify for the career offend *182 er sentencing enhancement under § 4B1.1 of the United States Sentencing Guidelines based on the 2002 conviction and another 1999 North Carolina conviction for possession with intent to manufacture, sell, and deliver cocaine.
The presentence report, accepted by the district court, recommended an advisory guidelines range of 262 to 327 months based on the offense conduct, Whiteside’s criminal record, and a three-level reduction for acceptance of responsibility. The government made a motion under § 5K1.1 of the Sentencing Guidelines for a downward departure for substantial assistance, which the court accepted. In light of the motion and after full consideration of the sentencing factors set forth in 18 U.S.C. § 3553(a), the district judge ultimately sentenced Whiteside to 210 months. The court entered judgment on July 20, 2010, and petitioner did not pursue a direct appeal. His conviction became final on August 3, 2010, when his time for appeal expired.
On May 18, 2012, petitioner filed a motion under 28 U.S.C. § 2255 to vacate his sentence in light of United States v. Simmons, 649 F.3d 237 (4th Cir.2011) (en banc). He argued that the sentence should be vacated because after Simmons his prior drug offenses would no longer qualify as predicate felony convictions for purposes of sentencing enhancements, including the career offender enhancement under § 4B1.1 of the guidelines. See Appellant’s Br. at 5. Assuming he would again receive a three-level reduction for acceptance of responsibility and a substantial assistance downward departure, Whiteside contends that, if resentenced, he would be subject to a markedly lower advisory guidelines range. Id. The government responds that the district court “possessed both the statutory authority and the discretion to impose the sentence it imposed, and were this case remanded and [petitioner resenteneed, the district court could properly impose the same sentence, even without application of the career-offender enhancement.” Gov’t Br. at 47.
The threshold issue before this court concerns the timeliness of Whiteside’s § 2255 petition. The district court for the Western District of North Carolina denied petitioner’s motion as untimely and declined to apply equitable tolling. A divided panel of this court vacated the sentence and remanded for resentencing, holding that the statutory limitations period should be equitably tolled and that Whiteside’s claims were otherwise cognizable on collateral review. See Whiteside v. United States, 748 F.3d 541 (4th Cir.2014). A majority of the active judges in the circuit voted to rehear the case en banc. See Order Granting Rehearing En Banc of July 10, 2014. We now hold that the petition is untimely and affirm the district court’s dismissal of it.
II.
Petitions for collateral relief filed pursuant to 28 U.S.C. § 2255 are subject to a one-year statute of limitations governed by § 2255(f).[1] The statute provides that the one-year clock is triggered by one of four' conditions, whichever occurs latest:
(1) the date on which the judgment of conviction becomes final;
(2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;
*183 (3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
(4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.
28 U.S.C. § 2255(f)(l)-(4).
A.
Petitioner contends that his claim falls under § 2255(f)(4), and that United States v. Simmons, 649 F.3d 237 (4th Cir.2011) (en banc), qualified as a new “fact” for purposes of that provision. White-side’s suit would be timely under this theory, since he filed his petition less than a year after Simmons was handed down.
Whiteside grounds his argument on the Supreme Court’s decision in Johnson v. United States, 544 U.S. 295, 125 S.Ct. 1571, 161 L.Ed.2d 542 (2005). In Johnson, the defendant’s sentence in the original proceeding was enhanced on the basis of two state convictions, one of which was later vacated. Following vacatur, Johnson sought federal post-conviction relief, contending that his enhanced sentence was no longer valid. Johnson’s conviction had become final more than a year before his § 2255 petition was filed, but the Court concluded that the vacatur qualified as a new fact for purposes of subsection (f)(4). See Johnson, 544 U.S. at 300-02. As the Court noted:
We commonly speak of the “fact of a prior conviction,” and an order vacating a predicate conviction is spoken of as a fact just as sensibly as the order entering it. In either case, a claim of such a fact is subject to proof or disproof like any other factual issue.
Id. at 306-07, 125 S.Ct. 1571 (internal citation omitted).
Johnson does not govern Whiteside’s claim. Simmons represented a change of law, not fact. The circuits to have considered this type of issue have uniformly reached the same conclusion. See, e.g., Phillips v. United States, 734 F.3d 573, 580-83 (6th Cir.2013) (finding the petition untimely where an intervening change in the law was insufficient to render the petitioner actually innocent); Lo v. Endicott, 506 F.3d 572, 575 (7th Cir.2007) (finding th'at an intervening change in law was not a new factual predicate sufficient to reset the statute of limitations period under AEDPA); E.J.R.E. v. United States, 453 F.3d 1094, 1098 (8th Cir.2006) (rejecting an intervening change in law as insufficient to reset the statute of limitations period under AEDPA and declining to equitably toll the statute of limitations); Shannon v. Newland, 410 F.3d 1083, 1088-89 (9th Cir.2005) (same); see also Minter v. Beck, 230 F.3d 663, 666 (4th Cir.2000) (rejecting, in a similar context, defendant’s attempt to invoke a change in law as an impediment to filing a habeas petition sufficient to toll AEDPA’s statute of limitations).[2]
Contrary to the vacatur at issue in Johnson, Simmons did not directly alter Whiteside’s legal status as a prior state offender. See Lo, 506 F.3d at 575. A conviction is a fact for sentencing purposes, but a relevant legal rule' is not. Simmons, “unlike a predicate conviction, is a ruling exclusively within the domain of the courts and is incapable of being proved or disproved.” E.J.R.E., 453 F.3d at 1098. This point is illustrated by the simple observation that “[w]e would never ... ask a jury to decide whether a judicial decision had indeed changed [the] law in the rele *184 vant way, nor would the parties introduce evidence on the question.” Shannon, 410 F.3d at 1089. Indeed, if this change in law is a “fact,” then what would not be?
Instead of altering the factual landscape, Simmons announced a generally applicable legal rule. A decision “establishing an abstract proposition of law arguably helpful to the petitioner’s claim does not constitute the ‘factual predicate’ for that claim.” Id. Decisions that change the legal significance of certain facts without modifying them do not qualify under (f)(4). Simmons did precisely this: unlike a vacatur decision, it altered the legal significance of Whiteside’s prior convictions without amending the convictions themselves. See Owens v. Boyd, 235 F.3d 356, 359 (7th Cir.2000) (“Time begins when the prisoner knows (or through diligence could discover) the important facts, not when the prisoner recognizes their legal significance.”); see also United States v. Pollard, 416 F.3d 48, 55 (D.C.Cir.2005).
Whiteside’s (f)(4) argument fails for the additional reason that it would effectively nullify (f)(3), which provides for tolling in instances where the defendant’s claim is founded on a right “newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review.” 28 U.S.C. § 2255(f)(3). As the Eighth Circuit has reasoned:
[The specific criteria enumerated in (f)(3) for tolling the limitations period] impliedly rejeet[] the notion that the creation of a new right by the Supreme Court that is not made retroactive to cases on collateral review, other rulings of law by the Supreme Court, and decisions taken from the courts of appeal in all instances, could trigger any of the limitations periods enumerated under § 2255.
E.J.R.E., 453 F.3d at 1098.
If changes in law are cognizable under (f)(4), then (f)(3) becomes superfluous because any claim brought under (f)(3) could also be brought under (f)(4). See Lo, 506 F.3d at 575. “To suggest, as [the petitioner] does, that any decision by any court on any issue could constitute a ‘factual predicate’ would swallow up the specifically delineated limitations in” (f)(3). Id. at 576. These considerations indicate that “subsequent interpretations of the law can be the basis of delay in filing a § 2255 motion only in accordance with § 2255(f)(3)”—not (f)(4). Sun Bear v. United States, 644 F.3d 700, 702 n. 5 (8th Cir.2011) (en banc) (internal quotation marks omitted). In other words, Whiteside’s view would render the statute of limitations virtually without limits. Notably, Whiteside does not even attempt to argue that his claim satisfies the requirements specified in (f)(3).
B.
Whiteside asserts in the alternative that if we reject his statutory argument, the statute of limitations should be equitably tolled. Equitable tolling of petitions for collateral review is available only when a defendant demonstrates “(1) that he has been pursuing his rights diligently, and (2) that- some extraordinary circumstance stood in his way and prevented timely filing.” Holland v. Florida, 560 U.S. 631, 649, 130 S.Ct. 2549, 177 L.Ed.2d 130 (2010) (internal quotation marks omitted). Under this court’s precedent, equitable tolling is appropriate in those “rare instances where—due to circumstances external to the party’s own conduct—it would be unconscionable to enforce the limitation period against the party and gross injustice would result.” Rouse v. Lee, 339 F.3d 238, 246 (4th Cir.2003) (en banc) (quoting Harris v. Hutchinson, 209 F.3d 325, 330 (4th Cir.2000)) (internal quo *185 tation marks omitted); see also United States v. Sosa, 364 F.3d 507, 512 (4th Cir.2004).
Whiteside claims that he was prevented from timely filing by the unfavorable precedent that would have governed his claim had he sued prior to Simmons. The standard announced in Holland, however, focuses not on whether unfavorable precedent would have rendered a timely claim futile, but on whether a factor beyond the defendant’s control prevented him from filing within the limitations period at all. See Shannon, 410 F.3d at 1090. Although Simmons plainly made a collateral attack on Whiteside’s sentence more plausible, nothing prevented Whiteside from filing his petition within the one-year statute of limitations. See E.J.R.E., 453 F.3d at 1098.
The Supreme Court has made clear that alleged futility cannot serve as “cause” for a procedural default in the context of collateral review. As the Court emphasized in Bousley v. United States, “futility cannot constitute cause if it means simply that a claim was unacceptable to that particular court at that particular time.” 523 U.S. 614, 623, 118 S.Ct. 1604, 140 L.Ed.2d 828 (1998) (quoting Engle v. Isaac, 456 U.S. 107, 130 n. 35, 102 S.Ct. 1558, 71 L.Ed.2d 783 (1982)) (internal quotation marks omitted). Every case “presents a myriad of possible claims.” Engle, 456 U.S. at 133, 102 S.Ct. 1558. The demands of finality oblige a petitioner to raise those claims that might possibly have merit even where “he thinks [the court] will be unsympathetic to the claim;” otherwise the claim is considered procedurally defaulted. Id. at 130, 102 S.Ct. 1558. It would be anomalous to contend that futility—something the Supreme Court has clearly said cannot serve as cause for procedural default—does nonetheless serve as cause for failure to timely file a § 2255 petition. For the law of procedural default and that of equitable tolling address the same basic question of when failures to raise claims are to be deemed excusable.
This court’s decision in Minter v. Beck confirms this line of reasoning. 230 F.3d 663 (4th Cir.2000). In that case, as here, the defendant’s claim originally seemed foreclosed by extant precedent. After the issuance of a favorable decision, Minter sought to collaterally attack his sentence, invoking a provision equivalent to § 2255(f)(2). He contended that the newly issued decision, by nullifying the unfavorable precedent that had previously barred his claim, served to remove an “impediment” to filing. After rejecting this argument, we held that equitable tolling was inappropriate. Minter, 230 F.3d at 666-67. We reasoned that unfavorable precedent may have rendered a timely claim unsuccessful but did not operate to bar Minter from making the attempt. This court echoed the Supreme Court in saying that “futility ... is not a valid justification for filing an untimely” petition. Id. at 666.
Nothing in Holland undermines these holdings. Though the Court there cautioned against a “too rigid” approach to equitable tolling, it nonetheless made clear that federal courts were to invoke the doctrine only in cases of truly “extraordinary circumstances.” Holland, 560 U.S. at 634, 649, 130 S.Ct. 2549. In that case, petitioner was the victim of extraordinary negligence by his attorney, who not only failed to file his federal habeas petition in a timely fashion, but also failed to communicate with petitioner, failed to inform him that the Florida Supreme Court had decided his case, and ignored his many letters repeatedly emphasizing the importance of preserving his claims for federal review. Id. at 652. Furthermore, the Florida courts repeatedly denied petitioner’s attempts to file pro se or have his attorney *186 removed for this record of ineptitude. Id. at 653. But those facts are far afield from the case at bar, which involves unimpeded access to federal court for claims brought there all the time.
Tellingly, Whiteside makes no allegation that he was unable to file in a timely fashion—only that doing so would probably have been unsuccessful in light of extant case law. But that allegation is manifestly insubstantial given the many defendants who filed suits prior to Simmons asserting the exact same substantive claim that Whiteside now raises, including, of course, Simmons himself. See, e.g., United States v. Brandon, 376 Fed.Appx. 343 (4th Cir.2010) (per curiam) (unpublished); United States v. Summers, 361 Fed.Appx. 539 (4th Cir.2010) (per curiam) (unpublished); United States v. Simmons, 340 Fed.Appx. 141 (4th Cir.2009) (per curiam) (unpublished), vacated, 561 U.S. 1001, 130 S.Ct. 3455, 177 L.Ed.2d 1048 (2010). These claims were not entirely meritless even under then-existing precedent: the Supreme Court’s decision in Carachuri-Rosendo v. Holder, 560 U.S. 563, 130 S.Ct. 2577, 177 L.Ed.2d 68 (2010), ahd the Sixth Circuit’s opinion in United States v. Pruitt, 545 F.3d 416 (6th Cir.2008), strongly foreshadowed Simmons. Equitable tolling thus may not be applied where, as here, the only impediment to timely filing was the discouragement felt by petitioner when calculating his odds of success.
III.
Whiteside insists, however, that the disparity in circuit law between then and now justifies setting aside the limitations period. That contention, however, overlooks the open-ended nature of his equitable tolling arguments. Roughly 80,000 persons are 'sentenced by federal district courts each year, and “[precedential decisions come pouring out of the federal courts of appeal and the Supreme Court” routinely. Hawkins v. United States, 706 F.3d 820, 824 (7th Cir.2013). If every favorable precedential decision could become, as Whiteside would have it, “a ticket to being resentenced,” id., the criminal justice system would need to “continually ... marshal resources in order to keep in prison defendants whose trials and appeals [and sentences] conformed to then-existing constitutional [and statutory] standards.” Id. (quoting Teague v. Lane, 489 U.S. 288, 310, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989) (plurality opinion)) (internal quotations omitted) (brackets in original).
In other words, if we accepted White-side’s view, we would be on the way to holding that a myriad of substantive changes in law past the point of finality would suffice to equitably toll the statute of limitations in § 2255(f) whenever it might be conjectured that past and future outcomes would be different. The implications of any such argument foreshadow a tectonic shift of resources from trial and direct appeal to repetitive rounds of collateral review. While resentencing is generally not as significant an encumbrance as a retrial, “the cumulative burden of resen-tencing in a great many stale cases could be considerable.” Id. That, of course, is the precise prospect a statute of limitations is enacted to prevent. As several circuits have noted, it is quite improper to use the doctrine of equitable tolling to circumvent the express limitations contained in § 2255. See, e.g., Lo, 506 F.3d at 576. A step of this magnitude would require either an act of Congress or a ruling from the Supreme Court, neither of which has come to pass.
Whiteside’s conviction became final on August 3, 2010. At the time, he was sentenced under the sentencing scheme outlined in United States v. Harp. See 406 *187 F.3d 242 (4th Cir.2005). On August 17, 2011, the court, sitting en banc, reversed the panel decision in Simmons, expressly-overruling Harp and this court’s treatment of predicate convictions for career offender enhancements. See Simmons, 649 F.3d 237. Whiteside did not file his motion to vacate his sentence in light of Simmons until May 18, 2012, almost two years after his conviction became final. But the relevant limitations period under § 2255(f) is one year after the conviction is final, not one year from a decision that effectuates a change in circuit law.
To appreciate the point, suppose three, five, or ten years had passed between a conviction becoming final and the time when some change in circuit law occurred. If we were to adopt Whiteside’s argument, whenever there is a change in circuit law of sufficient magnitude (whatever that is), a petitioner would have a year to file after the change, even if many years had passed since the conviction became final. That simply vitiates the point of statutes of limitations in general and this one in particular, namely that the relevant evidence not be stale or missing. Even changes in law must be applied to facts, and statutes of limitation reduce the risk of claims being less accurately litigated long after the fact.
It bears briefly summarizing just how much Whiteside would trench upon the prerogatives of other institutions to find equitable tolling in these circumstances. Petitioner would circumvent Congress’s highly refined statute of limitations, which specifically sets forth in § 2255(f)(3) when tolling would lie as a result of a change in law, a criterion which petitioner has manifestly failed to satisfy. Petitioner would further have us disregard the Supreme Court’s pointed language in Bousley and Engle and its historic limitation of equitable tolling to extraordinary circumstances beyond a petitioner’s control. See Holland v. Florida, 560 U.S. 631, 130 S.Ct. 2549, 177 L.Ed.2d 130 (2010). In disregarding the prerogatives of other institutions, we would invite additional collateral attacks long after convictions were final and whenever a change in law of arguable import might appear. Every statute of limitations contemplates by definition the possibility that some favorable development after the limitations period might occur. The legislative branch of our government is entrusted to set the balance between the ends of equity and the values safeguarded by according final judgments due effect. It is not our office to reset or recalibrate that balance in the case at bar. The judgment of the district court must accordingly be affirmed because the petition herein was not timely filed.[3]

AFFIRMED

. This discussion is modified and adapted from section II of the dissent to the panel's original decision in this case. See 748 F.3d 541, 556 (4th Cir.2014).

. The statute of limitations provisions in AED-PA under 28 U.S.C. § 2244(d)(l)(A)-(D) and 28 U.S.C. § 2255(f)(l)-(4) are in all material respects identical.

. The court wishes to express its appreciation both to Ann Hester and Amy Ray for the fine quality of their advocacy in this case.