# United States Court of Appeals
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

Argued February 5, 2015          Decided June 26, 2015

No. 13-5171

JAMES M. HEAD,
APPELLANT

v.

ERIC D. WILSON, WARDEN,
APPELLEE

Appeal from the United States District Court
for the District of Columbia
(No. 1:12-cv-00706)

*Rosanna M. Taormina*, Assistant Federal Public Defender, argued the cause for the appellant. *A.J. Kramer*, Federal Public Defender, was with her on brief.

*Peter S. Smith*, Assistant United States Attorney, argued the cause for the appellee. *Ronald C. Machen*, *Jr.*, United States Attorney, and *Elizabeth Trosman*, *Suzanne Grealy Curt* and *Thomas S. Rees*, Assistant United States Attorneys, were with him on brief.

Before: HENDERSON, PILLARD and WILKINS, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* HENDERSON.

KAREN LECRAFT HENDERSON, *Circuit Judge*: In 1980, a District of Columbia (D.C.) Superior Court jury convicted James M. Head of numerous violent crimes, including first-degree murder. Thirty-two years after his conviction and nearly fifteen years after expiration of the one-year statute of limitations contained in the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214, Head petitioned the district court for a writ of habeas corpus, arguing that his lawyer was ineffective. Head contends that AEDPA's limitations period was tolled until 2009 because, until our decision in *Williams v. Martinez*, our case law barred him from bringing his ineffective assistance of appellate counsel (IAAC) claim in federal court. *See* 586 F.3d 995, 1000 (D.C. Cir. 2009). We disagree and we therefore affirm the district court's denial of Head's petition and dismissal of the action.

## I. STATUTORY BACKGROUND

This case, although straightforward on the merits, involves the interplay among D.C.'s collateral-review statute, D.C. Code § 23-110, AEDPA's one-year statute of limitations, 28 U.S.C. § 2244(d)(1), and the case law interpreting both. For that reason, a quick overview of the legal landscape is in order.

### A. D.C. CODE § 23-110

In 1970, the Congress enacted the D.C. Court Reform and Criminal Procedure Act of 1970 (Act), Pub. L. No. 91-358, 84 Stat. 473, which "created a new local court system" and transferred responsibility for resolving D.C.–law claims from district court to superior court. *Swain v. Pressley*, 430

U.S. 372, 375 (1977). The Act also included the predecessor to section 23-110 of the D.C. Code. *See* Pub. L. No. 91-358, tit. II, § 210(a), 84 Stat. at 608–09. Section 23-110 establishes the procedure by which a person sentenced by the superior court can seek collateral review of his conviction or sentence.[1] Section 23-110 also gives the superior court exclusive jurisdiction of virtually all collateral challenges:

> An application for a writ of habeas corpus in behalf of a prisoner who is authorized to apply for relief by motion pursuant to this section shall not be entertained . . . by any Federal or State court if it appears that the applicant has failed to make a motion for relief under this section or that the Superior Court has denied him relief.

D.C. Code § 23-110(g); *see also Swain*, 430 U.S. at 377–78 (rejecting argument that section 23-110 only mandates exhaustion of D.C. remedies and holding instead that it vests exclusive jurisdiction in D.C. Superior Court).

---

[1] Section 23-110(a) allows "[a] prisoner in custody under sentence of the Superior Court" to "move the court to vacate, set aside, or correct the sentence" on the ground that:

> (1) the sentence was imposed in violation of the Constitution of the United States or the laws of the District of Columbia, (2) the court was without jurisdiction to impose the sentence, (3) the sentence was in excess of the maximum authorized by law, [or] (4) the sentence is otherwise subject to collateral attack.

D.C. Code § 23-110(a).

Although section 23-110 largely divests the federal courts of habeas jurisdiction, it contains a safety valve to blunt the risk of a Suspension Clause violation.[2] Specifically, section 23-110(g) provides that a prisoner sentenced in the superior court can seek a federal writ of habeas corpus if it "appears that the remedy by motion is inadequate or ineffective to test the legality of his detention." D.C. Code § 23-110(g). Section 23-110(g), however, left open a question that then went unresolved for many years: If a prisoner is barred from pursuing a claim under section 23-110 but can nonetheless pursue the same claim in the D.C. court system through a different procedure, does section 23-110's safety valve allow him to file a federal habeas petition or does the safety valve apply only if *every* route to D.C. court review is foreclosed?

The answer developed—slowly—through cases addressing prisoners who sought to raise IAAC claims on collateral review. More than three decades ago, the D.C. Court of Appeals held that IAAC claims "are not within the purview of [section] 23-110." *Streater v. United States (Streater I)*, 429 A.2d 173, 174 (D.C. 1980) (per curiam). It so held because section 23-110 "provides no basis upon which the trial court may review appellate proceedings." *Id.*; *see also Watson v. United States*, 536 A.2d 1056, 1060 (D.C. 1987) (*en banc*) (noting impropriety of "lower court . . . pass[ing] judgment on the efficacy of the appellate review"). Years later, the D.C. Court of Appeals clarified that the

---

[2] *See* U.S. CONST. art. I, § 9, cl. 2 ("The Privilege of the Writ of Habeas Corpus shall not be suspended, unless when in Cases of Rebellion or Invasion the public Safety may require it."). The U.S. Supreme Court upheld section 23-110 against a Suspension Clause challenge based on the safety-valve provision. *Swain*, 430 U.S. at 381.

proper procedural vehicle for raising an IAAC claim is a "motion . . . to recall the mandate" filed directly in the D.C. Court of Appeals. *Watson*, 536 A.2d at 1060; *see also Long v. United States*, 83 A.3d 369, 377–78 (D.C. 2013).

It was not until 2009 that we squarely addressed whether section 23-110(g) gave the district court habeas jurisdiction to hear IAAC claims that, as explained, cannot be raised by a section 23-110 motion but can nonetheless be raised by a motion to recall the mandate. In *Williams*, we held that the terms of section 23-110(g) "make[] clear" that it "only divests federal courts of jurisdiction to hear habeas petitions by prisoners who could have raised viable claims *pursuant to* section 23-110(a)." 586 F.3d at 998 (emphasis added). In other words, even if there is another mechanism in the D.C. court system that a prisoner can use to collaterally attack his sentence or conviction, section 23-110's safety valve is triggered so long as "the Superior Court lacks authority to entertain *a section 23-110*" motion for that particular claim. *Id*. (emphasis added). In reaching this conclusion, we recognized that our case law from the early 1980s "anticipated precisely th[is] situation." *Id.* at 999 (citing *Streater v. Jackson (Streater II)*, 691 F.2d 1026, 1028 (D.C. Cir. 1982)). We further observed that our earlier case law "seemed to have assumed that the [federal] district court would have jurisdiction to entertain" an IAAC claim, even though it had not affirmatively settled the issue. *Id*. For this reason, we took the next step in *Williams* and expressly "recognize[d] another [exception]" to section 23-110(g)'s divestiture of federal-court jurisdiction and allowed the petitioner's IAAC claim to proceed in district court. *Id*. at 1000.

## B.  AEDPA

Although *Williams* clarified that section 23-110's safety-valve provision authorizes federal habeas jurisdiction of an IAAC claim brought by a prisoner sentenced in superior court, a would-be federal habeas petitioner must still comply with the strictures of AEDPA—the federal court's "labyrinth" collateral review procedure, *Maynard v. Boone*, 468 F.3d 665, 669 (10th Cir. 2006).  For example, AEDPA contains a one-year statute of limitations that typically runs from the date a prisoner's state-court judgment becomes final,[3] either by conclusion of direct review (*i.e.*, denial of certiorari by the U.S. Supreme Court) or by expiration of the time for seeking direct review.  28 U.S.C. § 2244(d)(1)(A).  Prisoners like Head, whose convictions became final before AEDPA's effective date (April 24, 1996), were granted "a one-year grace period from that date in which to file a [federal habeas] motion—yielding a filing deadline of April 24, 1997." *United States v. Saro*, 252 F.3d 449, 451 (D.C. Cir. 2001).

Because obstacles may prevent a prisoner from filing a timely habeas petition, AEDPA expressly contemplates that the limitations period may be tolled.  *See* 28 U.S.C. § 2244(d)(1)(B)–(D).  One provision tolls AEDPA's limitations period until "the date on which [an] impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the

---

[3]  AEDPA recognizes that "a court of the District is a state court." *See Madley v. U.S. Parole Comm'n*, 278 F.3d 1306, 1308 (D.C. Cir. 2002); *Garris v. Lindsay*, 794 F.2d 722, 724 n.8 (D.C. Cir. 1986) (same); *see also Milhouse v. Levi*, 548 F.2d 357, 360 n.6 (D.C. Cir. 1976) ("[T]his Court has treated local courts as 'state' courts for the purposes of exhaustion and federal habeas corpus jurisdiction.").

applicant was prevented from filing by such State action." *Id.* § 2244(d)(1)(B). Neither this Court nor our sister circuits have precisely defined "impediment" under section 2244(d)(1)(B); "[t]he limited case law applying [it] has dealt almost entirely with the conduct of state prison officials who interfere with inmates' ability to prepare and to file habeas petitions by denying access to legal materials." *Shannon v. Newland*, 410 F.3d 1083, 1087 (9th Cir. 2005); *see, e.g.*, *Critchley v. Thaler*, 586 F.3d 318, 320 (5th Cir. 2009) (state court failure to process timely mailed petition "constitutes a state-created impediment"); *Egerton v. Cockrell*, 334 F.3d 433, 438–39 (5th Cir. 2003) (prison law library's failure to provide copy of AEDPA "constitutes an impediment") (quotation marks omitted). Writing for a plurality in *Lackawanna County District Attorney v. Coss*, Justice O'Connor suggested that section 2244(d)(1)(B) may apply if a state court "without justification, refuse[s] to rule on a constitutional claim that has been properly presented to it." 532 U.S. 394, 405 (2001).

In addition to statutory tolling provisions, AEDPA's statute of limitations, which is not a jurisdictional bar, can be equitably tolled. *See Holland v. Florida*, 560 U.S. 631, 645 (2010). That said, equitable tolling is appropriate only if a petitioner shows "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing." *United States v. Baxter*, 761 F.3d 17, 30–31 (D.C. Cir. 2014) (quoting *McQuiggin v. Perkins*, 133 S. Ct. 1924, 1931 (2013)). "To count as sufficiently 'extraordinary,' " we have held that "the circumstances that caused a litigant's delay must have been beyond [his] control"; in other words, the delay "cannot be a product of that litigant's own misunderstanding of the law or tactical mistakes in litigation." *Menominee Indian Tribe of Wis. v. United States*, 764 F.3d 51, 58 (D.C. Cir. 2014).

Indeed, "[w]hen a deadline is missed as a result of a 'garden variety claim of excusable neglect' or a 'simple miscalculation,' equitable tolling is not justified." *Id.* (quoting *Holland*, 560 U.S. at 651).

## II. PROCEDURAL HISTORY

Head's case began in 1980, when a D.C. Superior Court jury convicted him of two counts of felony murder, two counts of first-degree murder, four counts of armed kidnapping and two counts of armed robbery. *Head v. United States (Head I)*, 451 A.2d 615, 618 (D.C. 1982). "[N]ot earlier than December 3, 1982," Head filed what the D.C. courts ultimately construed as his first section 23-110 motion. *Head v. United States (Head II)*, 489 A.2d 450, 450 n.1 (D.C. 1985). Between the 1982 filing and 2011, Head filed no fewer than five additional collateral attacks under section 23-110.[4] He first made an IAAC claim via section 23-110 motion in 1989, *see Head III*, 626 A.2d at 1383, and he made the claim again in a 1991 motion to recall the mandate, *id.* at 1384.

On June 6, 2008, Head filed another section 23-110 motion in D.C. Superior Court. While it was pending, we issued our opinion in *Williams* (on November 13, 2009) and denied rehearing *en banc* (on December 23, 2009). *See Williams*, 586 F.3d 995. The superior court then denied Head's section 23-110 motion on January 25, 2010, and Head appealed the denial to the D.C. Court of Appeals. While *that*

---

[4] Head's efforts have not been entirely for naught; since his conviction, his armed kidnapping convictions were vacated for insufficient evidence, *see Head I*, 451 A.2d at 618–19, and his felony murder convictions were vacated because they merged with his premeditated murder convictions, *see Head v. United States (Head III)*, 626 A.2d 1382, 1383, 1387 n.11 (D.C. 1993).

appeal was pending, the United States Supreme Court denied certiorari in *Williams*. *See Williams v. Martinez*, 559 U.S. 1042 (2010) (mem.). The D.C. Court of Appeals eventually affirmed the Superior Court's denial of Head's section 23-110 motion on June 10, 2011, and the Supreme Court denied Head's subsequent petition for certiorari on January 23, 2012.

On April 16, 2012—within one year of the Supreme Court's denial of his petition for certiorari—Head filed a petition for writ of habeas corpus in district court. In his federal habeas petition, Head argued, *inter alia*, that the lawyer representing him on the direct appeal of his 1980 conviction was constitutionally ineffective. Recognizing that the passage of thirty-two years since his conviction affected the timeliness of his petition, Head argued that *Williams* created a "new circumstance" and removed an "impediment" that had prevented him from filing a timely petition. Pet. for Writ of Habeas Corpus 4. Because his section 23-110 motion was pending when *Williams* became final, Head further insisted that AEDPA's one-year statute of limitations did not start to run until the Supreme Court denied his petition for certiorari on January 23, 2012.

The district court ordered the Government to respond to Head's habeas petition, but eventually denied the petition as untimely, reasoning that his "convictions became final before the AEDPA" was enacted and, therefore, "it is the effective date of the AEDPA, not . . . *Williams*, which determined the start date of the one-year limitations period."[5] *Head v.*

---

[5] The district court recognized some confusion existed regarding whether Head's convictions became final in 1987 (when his direct appeal concluded) or in 1995 (when his kidnapping conviction was vacated). *Head IV*, 944 F. Supp. 2d at 42 n.1. Because both dates predate AEDPA's effective date, we agree with the district court that, for Head's instant petition, it makes no

*Wilson (Head IV)*, 944 F. Supp. 2d 40, 43 (D.D.C. 2013). On May 29, 2013, Head filed a timely notice of appeal and a motion for certificate of appealability (COA) with this Court.[6] We referred Head's COA motion to the district court, *see United States v. Mitchell*, 216 F.3d 1126, 1130 (D.C. Cir. 2000), which denied it. Head renewed his COA motion before us,[7] which we granted "as to the district court's determination that the habeas petition was untimely." Order Granting Certificate of Appealability (Jan. 13, 2014). Our review is *de novo. See United States v. Cicero*, 214 F.3d 199, 202 (D.C. Cir. 2000).

---

difference whether his convictions became final in 1995 or 1987. *See id.*

[6] Under AEDPA, a prisoner cannot appeal a district court's denial of a habeas petition unless he first secures a COA from either the district court or the court of appeals. 28 U.S.C. § 2253(c); *see Gonzalez v. Thaler*, 132 S. Ct. 641, 650 n.5 (2012). To do so, he must make "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The showing requires a petitioner to demonstrate that "jurists of reason would find it debatable whether the applicant states a valid claim of the denial of a constitutional right." *United States v. Arrington*, 763 F.3d 17, 23 (D.C. Cir. 2014) (brackets omitted). If "a district court denies relief in a § 225[4] case on procedural grounds without reaching the merits of the claim . . . the applicant must additionally show that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id.* (quotation marks omitted). The court of appeals has no jurisdiction unless and until a court grants a COA. *See id.* at 22.

[7] A few days after he renewed his COA motion before us, Head filed another COA motion in district court. The district court denied Head's motion via minute order on September 23, 2013.

### III. ANALYSIS

Head admits that, in the absence of tolling, AEDPA's statute of limitations expired nearly fifteen years ago. Consequently, we must decide whether our 2009 decision in *Williams* either (1) removed an "impediment" that was "created by State action" and violated "the Constitution or laws of the United States" under AEDPA, *see* 28 U.S.C. § 2244(d)(1)(B); or (2) constituted an "extraordinary circumstance" within our equitable tolling jurisprudence, *Menominee Indian Tribe*, 764 F.3d at 58.[8] Under either theory, Head cannot succeed unless our pre–*Williams* case law prevented him from filing a timely federal habeas petition.

### A. THE EFFECT OF *WILLIAMS*

Although they suffer from their own unique deficiencies, *see infra* § III.B, Head's twin tolling arguments are doomed by a common flaw—nothing in our pre–*Williams* jurisprudence prevented Head from pursuing his IAAC claim in a timely federal habeas petition. To the contrary, we emphasized in *Williams* that, since the 1980s, our case law "seemed to have assumed that the district court would have jurisdiction to entertain" IAAC claims, notwithstanding section 23-110's otherwise broad prohibition of federal jurisdiction. 586 F.3d at 998–99 (discussing *Streater II*, 691 F.2d at 1028); *see also Whiteside v. United States*, 775 F.3d 180, 186 (4th Cir. 2014) (*en banc*) (no tolling if earlier

---

[8] The Government concedes that, if AEDPA's statute of limitations was tolled until our *Williams* decision became final, the pendency of Head's section 23-110 motion further tolled AEDPA's statute of limitations and, therefore, his habeas petition would be timely.

precedent "strongly foreshadowed" intervening change in law). In other words, *Williams* simply made explicit what had already been implicit: when the D.C. Court of Appeals barred prisoners from raising IAAC claims under section 23-110 in the early 1980s, the plain terms of section 23-110(g) opened the door to federal habeas review for those claims. *See Williams*, 586 F.3d at 998. Indeed, no case prevented the petitioner in *Williams* from timely raising his IAAC claim in his federal habeas petition and, when he raised it, we agreed that the district court had jurisdiction to hear it. *See id.* at 1000; *see also Whiteside*, 775 F.3d at 186.

Head raises two counter-arguments, neither of which we find persuasive. First, he points to our isolated statement in *Williams* that "we have already recognized some exceptions under section 23-110(g), and *today we recognize another.*" *Williams*, 586 F.3d at 1000 (emphasis added). But it does not follow that our express "recogni[tion]" in *Williams* that IAAC claims are cognizable in federal court means that they were categorically foreclosed before. *Id.* In fact, *Williams*, read *in toto*, makes plain that we did no more than make explicit our earlier "assum[ption]" that a prisoner sentenced in superior court can raise an IAAC claim in federal court, notwithstanding section 23-110's broad language barring federal jurisdiction. *Id.* at 999 (citing *Streater II*, 691 F.2d at 1028).

Second, Head cites *Collier v. United States*, No. 99-5120, 1999 WL 1336229 (D.C. Cir. Dec. 15, 1999) (per curiam), as evidencing that IAAC claims were barred before *Williams*. In *Collier*, an unpublished order, we denied a *pro se* petitioner's request for a COA after the district court dismissed his habeas petition, which petition contained an IAAC claim. *Id.* at *1. We first observed that the petitioner had "properly pursued a motion to recall mandate, which is an appropriate collateral

procedure for presenting an ineffective assistance of appellate counsel claim." *Id.* We then reasoned that the petitioner had not "demonstrated that his local remedy was inadequate or ineffective" because "[f]ailure to prevail in that court does not render his local remedies inadequate or ineffective." *Id.* Therefore, we concluded that he had failed to make the requisite "showing of a denial of a substantial constitutional right" for the issuance of a COA. *Id.*

Head's reliance on *Collier* suffers from a trio of defects. As a threshold matter, *Collier* is an unpublished order entered before January 1, 2002. Accordingly, our rules mandate that *Collier* is "not to be cited as precedent," *see* D.C. CIR. R. 32.1(b)(1)(A),[9] and we do not rely on it as such, *see* D.C. CIR. R. 36(e)(2) ("[A] panel's decision to issue an unpublished disposition means that the panel sees no precedential value in that disposition."); *see also Nat'l Classification Comm. v. United States*, 765 F.2d 164, 170 (D.C. Cir. 1985) ("[U]npublished opinion . . . has no precedential effect with respect to other parties."). Next, it appears that the petitioner in *Collier* argued that the "local remedy" provided by the D.C. Court of Appeals "was inadequate or ineffective" because he "fail[ed] to prevail" on his motion to recall the mandate. *Collier*, 1999 WL 1336229, at *1. Nothing in *Collier* suggests that the petitioner argued that he had no adequate local remedy because section 23-110 review was *unavailable* and nothing in *Collier* suggests that, had he made

---

[9] Our rules distinguish between unpublished dispositions entered before January 1, 2002, which "are not to be cited as precedent," D.C. CIR. R. 32.1(b)(1)(A), and those entered on or after January 1, 2002, which "may be cited as precedent," D.C. CIR. R. 32.1(b)(1)(B), even though the issuing "panel's decision to issue an unpublished disposition means that the panel sees no precedential value in that disposition," D.C. CIR. R. 36(e)(2).

that claim—which we not only addressed and endorsed in *Williams* but also anticipated in *Streater II*—we would have held that federal habeas jurisdiction was lacking. Finally, and most importantly, we decided *Collier* on December 15, 1999, more than two years *after* AEDPA's statute of limitations expired on April 24, 1997. "Needless to say," Head "could not have let the deadline pass in reliance upon an order that the court had not yet entered." *Baxter*, 761 F.3d at 31.

This sweeping defect controls our disposition of Head's statutory and equitable tolling arguments. Nevertheless, there are additional problems with both arguments, which problems we briefly discuss.

## B.  TOLLING

AEDPA's one-year statute of limitations is tolled until removal of (1) an "impediment" that was (2) "created by State action" and that (3) violated "the Constitution or laws of the United States." 28 U.S.C. § 2244(d)(1)(B). Even if our pre–*Williams* jurisprudence rendered doubtful federal court jurisdiction, Head has failed to satisfy any of these three statutory requirements. First, we agree with the Fourth Circuit that "the term 'impediment,' as found in § 2244(d)(1)(B)," and "the term 'futile' " are "far from synonymous." *Minter v. Beck*, 230 F.3d 663, 666 (4th Cir. 2000). In other words, "an effort by [the petitioner] to obtain habeas relief prior to" a favorable change in law "may have been incapable of producing a successful result" but so long as "the effort itself was still possible," no "impediment" exists. *Id.* Indeed, the "Supreme Court has recognized in the analogous context of proving 'cause' for procedural default of a habeas claim" that "futility cannot constitute cause if it means simply that a claim was unacceptable to that particular court at that particular time." *Id.* (quoting *Bousley v. United*

*States*, 523 U.S. 614, 623 (1998)). Simply put, futility "is not a valid justification for filing an untimely § 2254 petition." *Id.*

Second, our pre–*Williams* jurisprudence is plainly not "State action." 28 U.S.C. § 2244(d)(1)(B). Even assuming that Head was prevented from pursuing his IAAC claim in federal court, it was our construction, as a *federal* court, of section 23-110, that allegedly prevented him from doing so. Recognizing this problem, Head shifts course in his reply brief and argues that we should construe *section 23-110* itself as the state action that impeded his timely filing. Because we generally do not consider arguments made for the first time in a reply brief, we find that Head has forfeited it. *See Holland v. Bibeau Const. Co.*, 774 F.3d 8, 14 (D.C. Cir. 2014).

Third, even if Head could demonstrate an "impediment" that was "created by State action," he has failed to show that such an impediment violated "the Constitution or laws of the United States." *Id*. Indeed, his only attempt to so demonstrate is buried in a footnote in his reply brief, where he argues that section 23-110(g)'s "bar to federal jurisdiction implicates the Suspension Clause." Pet'r's Reply Br. 4 n.2 (citing *Swain*, 430 U.S. at 381). Even if we were to consider an argument Head makes only in a footnote[10] in his reply brief, he would still have to demonstrate a Suspension Clause violation by showing that a motion to recall the mandate was not an "adequate substitute" for a federal writ of habeas corpus. *See INS v. St. Cyr*, 533 U.S. 289, 305 (2001). He makes no attempt to do so.

---

[10] *See Nat'l Oilseed Processors Ass'n v. OSHA*, 769 F.3d 1173, 1184 (D.C. Cir. 2014) ("[T]he court generally declines to consider an argument if a party buries it in a footnote and raises it in only a conclusory fashion.").

Head's equitable tolling argument fares no better. The Fourth Circuit has described equitable tolling as appropriate only in "rare instances where—due to circumstances external to the party's own conduct—it would be unconscionable to enforce the limitation period against the party and gross injustice would result." *Whiteside*, 775 F.3d at 184. Our case law is in accord: "To count as sufficiently 'extraordinary' to support equitable tolling, the circumstances that caused a litigant's delay must have been beyond its control." *Menominee Indian Tribe*, 764 F.3d at 58.

Here again, we find the rationale of our sister circuit persuasive. In *Whiteside*, the Fourth Circuit, sitting *en banc*, examined whether a federal habeas petitioner was, for the purpose of equitable tolling, "prevented from timely filing by . . . unfavorable precedent that would have governed his claim had he" timely filed. 775 F.3d at 185. Answering in the negative, the *Whiteside* Court held that the equitable tolling standard "focuses not on whether unfavorable precedent would have rendered a timely claim futile, but on whether a factor beyond the defendant's control prevented him from filing within the limitations period at all." *Id.* Indeed, "[t]he demands of finality oblige a petitioner to raise those claims that might possibly have merit even where he thinks the court will be unsympathetic." *Id.* (brackets and quotation marks omitted); *see also Minter,* 230 F.3d at 666–67 (change in law not impediment to filing habeas petition and thus insufficient to equitably toll AEDPA statute of limitations).

The Fourth Circuit's reasoning in *Whiteside* is consistent with cases from other circuits[11] and with our own recognition

---

[11] *See, e.g.*, *Lo v. Endicott*, 506 F.3d 572, 575 (7th Cir. 2007) (intervening change in law not new factual predicate sufficient to reset statute of limitations period under AEDPA); *E.J.R.E. v. United States*, 453 F.3d 1094, 1098 (8th Cir. 2006) (intervening

that a party is "not excused from timely filing its claim because . . . the law might be inhospitable" inasmuch as "the only sure way to determine whether a suit can be maintained is to try it." *Menominee Indian Tribe*, 764 F.3d at 61 (brackets omitted). At most, Head's argument reduces to a claim that our pre–*Williams* jurisprudence—because it was arguably unsettled—contributed to his "misunderstanding of the law" and prompted a "mistake[n]" belief that, had he filed a federal habeas petition before April 24, 1997, the federal court would have dismissed it in reliance on section 23-110. *Id.* As we have made plain, that argument is far from enough to support equitable tolling. *See id.*

For the foregoing reasons, we affirm the district court's judgment.

*So ordered.*

---

change in law insufficient to reset statute of limitations period under AEDPA and declining to equitably toll statute of limitations); *Shannon v. Newland*, 410 F.3d 1083, 1088–90 (9th Cir. 2005) (same).