**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

———————

**No. 16-7168**

———————

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

ANDRA G. GREEN, a/k/a Giz, a/k/a Gizzle, a/k/a A. Gizzle, a/k/a Andra Gabrael Green,
a/k/a Andra Gabriel Green, Jr., a/k/a A.J.,

Defendant - Appellant.

———————

Appeal from the United States District Court for the Eastern District of Virginia, at
Newport News.  Rebecca Beach Smith, Senior District Judge.  (4:09-cr-00081-RBS-FBS-7;
4:16-cv-00022-RBS)

———————

Argued:  January 24, 2023                               Decided:  May 16, 2023

———————

Before GREGORY, Chief Judge, WYNN, and THACKER, Circuit Judges.

———————

Affirmed in part, vacated in part, and remanded by published opinion.  Chief Judge Gregory
wrote the opinion, in which Judge Wynn and Judge Thacker joined.

———————

**ARGUED:**  Caleb Grant, UNIVERSITY OF GEORGIA SCHOOL OF LAW, Athens,
Georgia, for Appellant. Joseph Attias, OFFICE OF THE UNITED STATES ATTORNEY,
Richmond, Virginia, for Appellee. **ON BRIEF:**  Thomas V. Burch, Appellate Litigation
Clinic, UNIVERSITY OF GEORGIA SCHOOL OF LAW, Athens, Georgia, for
Appellant.  Jessica D. Aber, United States Attorney, OFFICE OF THE UNITED STATES
ATTORNEY, Richmond, Virginia, for Appellee.

———————

GREGORY, Chief Judge:

In 2011, Andra Green pled guilty to two counts of using a firearm to commit murder in the course of a "crime of violence," in violation of 18 U.S.C. § 924(j). In 2016, he filed a pro se motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. In the motion, he cited the Supreme Court's decision in *Johnson v. United States*, 576 U.S. 591 (2015), which held that the "residual clause" in the Armed Career Criminal Act's ("ACCA") definition of "violent felony," 18 U.S.C. § 924(e)(2)(B)(ii), was unconstitutionally vague. Although Green filed his § 2255 motion within one year of the *Johnson* decision, the district court dismissed the motion as untimely. The court concluded that *Johnson* did not affect the validity of Green's § 924(j) convictions because they rested on predicate "crime[s] of violence" as defined in 18 U.S.C. § 924(c), not on the ACCA definition of "violent felony."

While Green's appeal was pending, the Supreme Court held that the residual clause in § 924(c)'s definition of a "crime of violence" was unconstitutionally vague, recognizing the specific right Green asserted in his § 2255 motion. *See United States v. Davis*, 139 S. Ct. 2319, 2323–24 (2019). Because Green filed his motion within one year of *Johnson* and *Davis* extended the Supreme Court's reasoning in *Johnson*, we hold that it was timely. Nevertheless, we affirm the dismissal of Green's motion as to one of his § 924(j) convictions because Green procedurally defaulted his claim challenging the conviction and cannot establish grounds for excusing the default. We vacate Green's conviction and sentence on the other § 924(j) count because the conviction is unsupported by a valid predicate offense, and the Government concedes that he is entitled to relief.

I.

A.

In 2011, a federal grand jury in the Eastern District of Virginia indicted Green and several other individuals on thirty-six counts related to gang activity in Hampton Roads, Virginia. The most serious charges stemmed from the separate killings of John Henry Green and Demareo Dontae Hardy, both of which occurred during drug robberies. For his involvement in the killings, Green was charged with two counts of using a firearm to commit murder during a crime of violence (18 U.S.C. § 924(j)), as well as attempted and completed Hobbs Act robbery (18 U.S.C. § 1951(a)–(b)), conspiracy to commit Hobbs Act robbery, and related firearms charges.

Section 924(j) adopts § 924(c)'s definition of a "crime of violence." That section defines a crime of violence as an offense that either "(A) has as an element the use, attempted use, or threatened use of physical force against the person or property of another" (the "elements clause" or "force clause"); or "(B) that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense" (the "residual clause"). 18 U.S.C. § 924(c)(3)(A)–(B).

In October 2011, Green pled guilty to the two § 924(j) counts.[1] The first, Count 29, related to the murder of John Henry Green and identified two predicate crimes of violence: conspiracy to commit Hobbs Act robbery and attempted Hobbs Act robbery. The second, Count 34, related to the murder of Hardy and also identified two predicates: conspiracy to

_____

[1] Green was also charged and pled guilty under 18 U.S.C. § 2, which provides that an individual who aids or abets a federal offense is punishable as a principal.

3

commit Hobbs Act robbery and completed Hobbs Act robbery.  Neither the indictment nor the plea agreement specified whether these predicate offenses qualified as crimes of violence under the elements clause or the residual clause of § 924(c).  As part of the plea agreement, Green waived his right to appeal his convictions or sentence.

The district court accepted the plea and, in January 2012, sentenced Green to concurrent life sentences for Counts 29 and 34.  On the Government's motion, the court dismissed the remaining counts of the indictment.  Green did not file a direct appeal.

## B.

On April 11, 2016, Green filed a pro se motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255.  The motion, which he submitted on a § 2255 form for incarcerated persons, was sparse on substance.  Green sought "[r]elief of my sentence [e]nhancements" and cited the Supreme Court's 2015 decision in *Johnson*.  J.A. 101.  The motion did not further discuss how *Johnson* affected his convictions or sentence.  In the section of the form titled "timeliness of motion," Green wrote:  "There are no statutes of limitations on any murder.  At any giv[en] time there can be sufficient or insufficient material brought to further the case which could also leave room for error."  J.A. 109.  Green asked the court to grant the following relief:  "That my LIFE sentence be reduced to no less than 240 months and no more than 360 months."  J.A. 110.

The following day, the district court issued a show cause order directing Green to explain why his motion, which he filed more than four years after his conviction became final, was not untimely under the Antiterrorism and Effective Death Penalty Act's ("AEDPA") one-year statute of limitations for § 2255 motions.  *See* 28 U.S.C. § 2255(f).

4

The court noted that Green's argument about murder offenses having no statute of limitations was irrelevant, as the limitations period for § 2255 motions does not change based on the crime of conviction. The court gave Green thirty days to file a response and warned him it would dismiss the motion if he failed to do so.

Green responded to the show-cause order one week later. He argued that his motion should not be time-barred because the court had not provided "the proper documents to research [his] motion" in a timely manner, the Bureau of Prisons had lost certain relevant documents, and he lacked access to legal assistance while housed in solitary confinement. J.A. 114. The district court found Green's response inadequate because it lacked a certificate of service to the Government and stated it would strike the response from the record unless Green corrected the deficiency within thirty days. Green did not submit a corrected response within the thirty-day window.

On June 7, 2016, the district court dismissed Green's § 2255 motion without requesting a response from the Government. It held the motion was untimely under § 2255(f) because Green did not file it within one year after his conviction became final. The court considered whether the motion was timely under § 2255(f)(3), which permits a petitioner to file a § 2255 motion within one year of "the date on which the right asserted [in the motion] was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review." 28 U.S.C. § 2255(f)(3). The court acknowledged that Green's motion cited *Johnson*, which was decided less than a year before he filed the motion, but stated that Green "was not sentenced under the ACCA" and "does not explain how *Johnson* could

5

apply to his conviction or sentence." J.A. 117–18. It therefore concluded that the motion was not timely under § 2255(f)(3). J.A. 118. The district court declined to grant a certificate of appealability.

After the appeal deadline expired, Green filed a request for an extension to respond to the district court's dismissal order. He attached an "affidavit" in which he argued that the residual clause in § 924(c) is "unconstitutionally va[gu]e and do[es] not have a force clause." J.A. 125. Green asserted that "after the Supreme Court decision in *Johnson*, 135 S. Ct. 2552 (2015), this residual clause [] is no longer valid," and that his "2255(f)(3) is timely" because it was filed within a year of *Johnson*. *Id.* The district court construed Green's request as a motion for an extension of time to file an appeal and granted an extension. Green filed a notice of appeal within the extension period.

C.

We initially placed Green's appeal in abeyance pending decisions from the Supreme Court and this Court that might bear on the validity of Green's § 924(j) convictions. In 2019, the Supreme Court decided *Davis*, which held that the residual clause in § 924(c) is unconstitutionally vague. 139 S. Ct. at 2323–24. We have since held that the rule recognized in *Davis* applies retroactively to cases on collateral review. *In re Thomas*, 988 F.3d 783, 789 (4th Cir. 2021). After *Davis*, an offense qualifies as a crime of violence only if it meets the definition in § 924(c)'s elements clause. To determine whether an offense satisfies that clause, courts must apply the categorical approach, "consider[ing] only the elements of the offense in question without regard to an individual's conduct in committing the crime." *United States v. Melaku*, 41 F.4th 386, 391 (4th Cir. 2022).

6

We ultimately granted a certificate of appealability on two issues: (1) "whether a § 2255 motion filed within a year of *Johnson v. United States*, but effectively premised on *United States v. Davis*, is timely"; and (2) "if so, whether, following *Davis*, Green's . . . convictions are infirm." Dkt. No. 70 (citations omitted). We review the district court's dismissal of Green's § 2255 motion de novo. *United States v. Brown*, 868 F.3d 297, 301 (4th Cir. 2017).

## II.

To start, the Government agrees that Green's § 924(j) conviction for Count 29 should be vacated and affirmatively waives any statute-of-limitations or other procedural defenses as to that count.[2] After *Davis* struck down § 924(c)'s residual clause, neither offense underlying Count 29—conspiracy to commit Hobbs Act robbery and attempted Hobbs Act robbery—is a valid predicate. The Supreme Court recently held that attempted Hobbs Act robbery does not satisfy § 924(c)'s elements clause because "it does not require the government to prove that the defendant used, attempted to use, or even threatened to use force against another person or his property." *United States v. Taylor*, 142 S. Ct. 2015, 2020 (2022). This Court has reached the same conclusion for conspiracy to commit Hobbs Act robbery. *United States v. Simms*, 914 F.3d 229, 233–34 (4th Cir. 2019) (en banc). Accordingly, Green's conviction for Count 29 can no longer stand.

---

[2] Even if the Government had not waived a statute-of-limitations defense as to Count 29, Green's motion was timely for the reasons discussed in Part III.A, *infra*.

7

We therefore reverse the district court's dismissal order as to Count 29 and remand with instructions to vacate that conviction and sentence.

III.

The parties' dispute begins with Count 34, which is predicated on Hobbs Act conspiracy and completed Hobbs Act robbery.  Because Hobbs Act conspiracy is not a valid § 924(c) predicate, Green's conviction must rest on the completed Hobbs Act robbery predicate, which is valid only if it qualifies as a crime of violence under the elements clause. Green contends that Hobbs Act robbery does not satisfy the elements clause, and he further asserts that the elements clause, like the residual clause, is unconstitutionally vague.

Before reaching the merits, though, we must determine whether Green's § 2255 motion was untimely or otherwise procedurally barred.  The Government argues that the district court properly dismissed the motion as untimely because Green did not file it within one year of *Johnson*.  In the alternative, the Government asserts that the district court's dismissal order should be affirmed because Green procedurally defaulted his claims by failing to raise them during his plea proceedings or on direct appeal.  Although Green's motion is not time-barred, we hold that his claims are procedurally defaulted and that his default bars him from obtaining collateral relief.[3]

---

[3] The Government also argues that Green forfeited his claims by failing to develop them in his § 2255 motion.  Because we resolve Green's appeal based on the procedural default, we do not need to reach that issue.

A.

We first consider whether Green timely filed his § 2255 motion. "Normally, for a motion to be timely under § 2255(f), a petitioner must file for relief within one year of the date that his judgment of conviction becomes final." *Brown*, 868 F.3d at 301 (citing § 2255(f)(1)). Where, as here, a petitioner does not file a direct appeal, a conviction becomes final when the appeal period expires. *See Whiteside v. United States*, 775 F.3d 180, 182 (4th Cir. 2014) (en banc). Green's appeal period expired on February 8, 2012, and he did not file his § 2255 motion until April 11, 2016, more than four years later. Because no other statutory extension to the limitations period applies, Green's motion is timely only if it was filed within one year of "the date on which the right asserted [in the motion] was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively available to cases on collateral review." 28 U.S.C. § 2255(f)(3).

Green filed his § 2255 motion less than one year after the Supreme Court struck down the ACCA residual clause in *Johnson*, and his citation to *Johnson* reflects his belief that the decision raised doubts about the constitutionality of § 924(c)'s very similar residual clause. Applying this Court's liberal construction rules for pro se pleadings, *see Booker v. S.C. Dep't of Corr.*, 855 F.3d 533, 540 & n.4 (4th Cir. 2017), we read Green's motion as

9

asserting a right not to be convicted and sentenced for § 924 offenses based on § 924(c)'s vague residual clause.[4]

This is precisely the right recognized in *Davis*. *See* 139 S. Ct. at 2323–24. The complicating factor here is that Green filed his § 2255 motion—and the district court dismissed it—prior to the *Davis* decision. Although Green filed the motion within one year of *Johnson*, this Court has previously held that *Johnson* did not "recognize a broad right invalidating all residual clauses as void for vagueness simply because they exhibit wording similar to ACCA's residual clause." *Brown*, 868 F.3d at 302. Relying on that reasoning, the majority in *Brown* held that a § 2255 motion filed within one year of *Johnson* but challenging a similar residual clause in § 4B1.2(a) of the Sentencing Guidelines was untimely. *Id.* at 300, 302–03. According to the Government, *Brown* prohibits Green from relying on *Johnson* to establish timeliness, and the Supreme Court's later decision in *Davis* does not cure the timeliness problem.

However, *Brown* is not controlling here. At the time of this Court's decision in *Brown*, the Supreme Court had not invalidated the § 4B1.2(a) residual clause. *See id.* at 302 (stating that "the Supreme Court left open the question of whether Petitioner's asserted

---

[4] Admittedly, Green's § 2255 motion was inartful. He appeared not to recognize that the status of the § 924(c) provisions defining "crime of violence" affects the validity of his § 924(j) convictions, instead requesting relief on his "sentence [e]nhancements" and asking for a sentence reduction. J.A. 101. Nonetheless, "courts are obligated to 'liberally construe[]' pro se complaints, 'however inartfully pleaded.'" *Booker*, 855 F.3d at 540 (quoting *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)). It is hardly a stretch to interpret Green's citation to *Johnson*—which struck down a residual clause nearly identical to the one in § 924(c)—as a claim that Green's convictions and sentence rested on a similarly unconstitutional statute.

10

right exists"). Here, by contrast, *Davis* struck down § 924(c)'s residual clause as unconstitutionally vague while Green's current appeal was pending. In so holding, *Davis* "formally acknowledged" the right Green's motion asserted "in a definite way." *Id.* at 301. *Brown* therefore does not resolve this case.

Instead, the key question is whether *Davis* renders Green's *Johnson*-based motion timely. We hold that it does. For starters, "[t]he *Davis* Court extended the holding[] of *Johnson*" to invalidate the "analogous" residual clause in § 924(c). *Thomas*, 988 F.3d at 789. Indeed, in concluding that § 924(c)'s residual clause is unconstitutionally vague, the Supreme Court noted that the clause "bear[s] more than a passing resemblance" to the ACCA residual clause it had struck down in *Johnson*. *Davis*, 139 S. Ct. at 2325–26. *Davis* thus confirmed what Green's motion asserted: that the vagueness analysis in *Johnson* also called into question the constitutionality of § 924(c)'s residual clause.

Further, the text of § 2255(f)(3) does not compel the conclusion that Green's motion is untimely. The statute is silent on how to address this particular scenario, where a petitioner filed a § 2255 motion within a year of a Supreme Court decision recognizing a closely analogous right, and the Supreme Court then recognized the specific right at issue during the pendency of the § 2255 proceedings. Nor do the purposes of the AEDPA statute of limitations support the restrictive interpretation the Government proposes. Section 2255(f)(3) gives petitioners a year to file a § 2255 motion when the Supreme Court recognizes a new right that might undermine the validity of their conviction or sentence. By extending the limitations period in such cases, Congress expressed its judgment that the extension would not interfere with the purpose of the statute of limitations, which is to

11

"curb the abuse of the statutory writ of habeas corpus," *Dunlap v. United States*, 250 F.3d 1001, 1005 (6th Cir. 2001) (quoting H.R. Rep. No. 104-518, at 111 (1996)), including "undue delays," *id.* at 1006. A petitioner certainly does not contribute to "undue delays" by filing a § 2255 motion too *early*. And a petitioner does not "abuse" the writ by raising an argument, based on very persuasive but non-controlling Supreme Court precedent, that the Supreme Court then endorses in a controlling decision.

Interpreting § 2255(f)(3) to bar Green's motion also would lead to nonsensical and even absurd results, which "are to be avoided." *In re Graham*, 61 F.4th 433, 440 (4th Cir. 2023) (quoting *Griffin v. Oceanic Contractors, Inc.*, 458 U.S. 564, 575 (1982)). For one, there is no question that Green's motion would have been timely had he waited to file until *after* the Supreme Court's *Davis* decision. Further, if the motion had been fully litigated and dismissed before *Davis*, Green could have obtained authorization to file a successive § 2255 motion raising the *Davis* claim; this Court has authorized a petitioner to file a second § 2255 motion post-*Davis* where the petitioner's first (pre-*Davis*) motion had relied on *Johnson* and *Sessions v. Dimaya*, 138 S. Ct. 1204 (2018), which struck down a similar residual clause in 18 U.S.C. § 16(b). *See Thomas*, 988 F.3d at 786–87.

But if we affirmed the dismissal of Green's pending motion, any future request to file a successive § 2255 motion would be untimely because more than one year has passed since the *Davis* decision.[5] *See Dodd v. United States*, 545 U.S. 353, 359 (2005) (stating

---

[5] If Green sought to file a successive § 2255 motion, the fact that he was diligently appealing the denial of his first motion in the year after *Davis* might support equitably tolling the one-year limitations period. *See Holland v. Florida*, 560 U.S. 631, 649 (2010). (Continued)

12

that § 2255(f)'s limitations period applies to successive § 2255 motions).  Thus, dismissing the pending motion would threaten to bar Green from asserting a right to collateral relief, solely because the Supreme Court happened to recognize the right while his first § 2255 motion was pending and his appeal was not resolved within a year of that decision.  That would "yield the odd result that the Supreme Court's eventual endorsement of the constitutional right argued for in [the § 2255 motion] now precludes him from seeking to vindicate that very right." *Granda v. United States*, 990 F.3d 1272, 1284 (11th Cir. 2021).  In addition to making no practical sense, such a result would be highly unfair, trapping Green in a procedural no-man's-land even though *Davis* recognized the precise right he asserted in his motion.

Our sister circuits have treated § 2255 motions as timely under identical or very similar circumstances.  In an unpublished decision, the Eleventh Circuit held that a § 2255 motion challenging a § 924(c) conviction was timely where it was filed within one year of *Johnson* and the Supreme Court decided *Davis* while the petitioner's appeal was pending. *Trubey v. United States*, 813 F. App'x 351, 352–53 (11th Cir. 2020).  In addition, the Fifth Circuit has held that a request for authorization to file a successive § 2255 motion challenging the residual clause in 18 U.S.C. § 16(b) was timely where the petitioner filed the request "within one year of *Johnson*" but before the Supreme Court struck down the § 16(b) residual clause in *Dimaya*. *United States v. Vargas-Soto*, 35 F.4th 979, 992–93 (5th Cir. 2022).

---

Even so, requiring Green to file a second motion would accomplish nothing but a waste of judicial resources.

13

The Government also asserts that Green's motion was untimely because it relies on an argument that neither *Davis* nor any other Supreme Court decision has endorsed.  The Government emphasizes that Green, on appeal, focuses on challenging his conviction under § 924(c)'s *elements clause*, not the residual clause.  But that misses the point.  After *Davis* invalidated the residual clause, Green's conviction for Count 34 can stand only if Hobbs Act robbery satisfies the elements clause.  In other words, Green now focuses on the elements clause precisely because of the right the Supreme Court recognized in *Davis*.

Because Green filed his § 2255 motion within one year of *Johnson*, and *Davis* extended *Johnson*'s reasoning to recognize the right asserted in the motion, the motion was timely under § 2255(f)(3).

## B.

The Government next argues that Green procedurally defaulted his challenge to Count 34 by failing to raise it during his plea proceedings or on direct appeal, and that there are no grounds for excusing the default.  Because the district court dismissed Green's § 2255 motion as time-barred without requesting a response from the Government, the court did not consider the procedural default question.  Though we generally prefer for the district court to consider an issue in the first instance, we have declined to remand in cases where "no fact-finding is required, the issue has been fully briefed by each side, and the result is obvious."  *Bostick v. Stevenson*, 589 F.3d 160, 165 (4th Cir. 2009).  Because the procedural default issue here involves purely legal questions, both parties addressed it on

14

appeal,[6] and "the outcome is readily apparent," *Bigelow v. Virginia*, 421 U.S. 809, 826–27 (1975), we resolve it in the first instance.

Green does not dispute that he procedurally defaulted his challenge to Count 34, but he does argue that the default should be excused. To raise a defaulted claim on collateral review, Green must show "cause" for the default and "prejudice" resulting from it, or he must demonstrate that he is "actually innocent." *Bousley v. United States*, 523 U.S. 614, 622 (1998) (quoting *Murray v. Carrier*, 477 U.S. 478, 485, 495–96 (1986)).

1.

Our analysis begins with the cause-and-prejudice excuse for procedural default. Although Green can show cause for failing to raise a vagueness challenge to § 924(c)'s residual clause at the time of his conviction, we conclude that he was not prejudiced by the default.

a.

To demonstrate cause for a procedural default, a petitioner must show there was "some external impediment preventing counsel from constructing or raising the claim" at the time of conviction and direct appeal. *Murray*, 477 U.S. at 492. As relevant here, cause exists when the defaulted claim was "so novel that its legal basis [was] not reasonably available to counsel." *Bousley*, 523 U.S. at 622 (quoting *Reed v. Ross*, 468 U.S. 1, 16 (1984)).

---

[6] After the Government raised a procedural default defense in its response brief, Green's reply brief devoted almost no attention to the issue. During oral argument, though, both parties discussed whether Green's procedural default should be excused. Because this is not a close question, we see no benefit to remanding it.

15

Green can establish cause because a vagueness challenge to the § 924(c) residual clause was not "reasonably available" to his counsel at the time of his 2012 conviction. This conclusion follows from this Court's recent decision in *United States v. McKinney*, 60 F.4th 188 (4th Cir. 2023). There, the petitioner pled guilty in 2012 to a § 924(c) offense, with conspiracy to commit Hobbs Act robbery identified as the predicate crime of violence. *Id.* at 191. The petitioner waived his right to appeal but later filed a § 2255 motion based on *Davis*. *Id.* The district court dismissed the motion based in part on its conclusion that the petitioner had not shown cause for excusing his procedural default. *Id.*

This Court reversed. We noted that the Supreme Court's decision in *Reed v. Ross* recognized that a claim may be sufficiently "novel" to establish cause when a later Supreme Court decision "disapprov[es] a practice [the Supreme] Court arguably has sanctioned in prior cases." *Id.* at 194 (quoting *Reed*, 486 U.S. at 17). The petitioner in *McKinney* raised "precisely th[is] type of novel claim" because, at the time of his 2012 conviction, the Supreme Court had twice affirmed the constitutionality of the ACCA residual clause. *Id.*; *see Sykes v. United States*, 564 U.S. 1, 15 (2011); *James v. United States*, 550 U.S. 192, 210 n.6 (2007). We concluded that those decisions "effectively foreclosed" vagueness challenges to § 924(c)'s similar residual clause until *Johnson* reversed course and struck down the ACCA residual clause in 2015. *McKinney*, 60 F.4th at 194. Relying on *James* and *Sykes*, this Court and other circuits had uniformly rejected vagueness challenges to residual clauses and only "began to reconsider the constitutionality of § 924(c)'s analogous residual clause" after *Johnson*. *Id.* at 194–95 (citing cases). Finally, the *McKinney* Court pointed out that some of our sister circuits have found cause for failing to raise vagueness

16

challenges to residual clauses, including § 924(c)'s, prior to *Johnson*. *Id.* at 195; *see Jones v. United States*, 39 F.4th 523, 525 (8th Cir. 2022); *United States v. Snyder*, 871 F.3d 1122, 1127 (10th Cir. 2017); *United States v. Garcia*, 811 F. App'x 472, 480 (10th Cir. 2020) (unpublished).

Green's case is on all fours with *McKinney*. Like the petitioner in *McKinney*, Green pled guilty before *Johnson* overruled the earlier Supreme Court decisions that upheld the ACCA residual clause. As in *McKinney*, there was "almost certainly . . . no reasonable basis upon which an attorney previously could have urged a . . . court to adopt the position" the Supreme Court later endorsed in *Johnson*. *McKinney*, 60 F.4th at 195 (quoting *Reed*, 468 U.S. at 17). Green therefore can establish cause for his default.

The Government argues that for Green to show cause, he also must demonstrate that an *elements clause* challenge to his Hobbs Act robbery predicate was unavailable in 2012. But it would have been pointless for Green to make that argument at the time, given that there was no reason to doubt the constitutionality of the residual clause. Green apparently conceded that his predicates fell within the more expansive residual clause, and his conviction would have been upheld under that clause alone. As long as a vagueness challenge to the residual clause was unavailable, a separate elements clause argument would have been fruitless; even if successful, it would not have provided him relief.

The Government's position also conflates the defaulted *claim* with the ultimate merits of Green's request for collateral relief. Green's conviction remains valid if Hobbs Act robbery satisfies the elements clause, but the elements clause is relevant only because *Davis* endorsed Green's defaulted claim and held the residual clause unconstitutional.

17

Under the Government's preferred approach, petitioners could establish cause only by showing that every alternative ground for affirming their conviction or sentence was not open to challenge in a direct appeal. That conflicts with *McKinney*, where we found cause because a vagueness challenge to § 924(c)'s residual clause was unavailable at the time of the petitioner's conviction, without considering whether he could have separately contested the status of his predicate offense under the elements clause. *See* 60 F.4th at 194–95.

b.

Although Green had cause for excusing his procedural default, we hold that he was not prejudiced by the default.

To establish prejudice, a § 2255 petitioner must show that the default "worked to his *actual* and substantial disadvantage" and has "constitutional dimensions." *Murray*, 477 U.S. at 494 (emphasis in original). Beyond that general rule, "[t]he Supreme Court has yet to define the exact contours of the prejudice standard in the § 2255 procedural-default context." *McKinney*, 60 F.4th at 195; *see United States v. Frady*, 456 U.S. 152, 168 (1982). Generally speaking, in cases involving guilty pleas, "we ask whether it is likely a defendant, had he known of the error, would not have pled guilty to the count of conviction." *McKinney*, 60 F.4th at 196. The focus is on the petitioner's conviction; "demonstrating prejudice sufficient to excuse procedural default does not require consideration of the charges foregone by the Government in the course of plea bargaining." *Id.* at 197 (internal quotation marks and emphasis omitted).

In *McKinney*, we held that the petitioner suffered prejudice as a result of his defaulted claim because his § 924(c) conviction, which was predicated on an offense that

18

does not satisfy the elements clause (Hobbs Act conspiracy), "subjects him to imprisonment for conduct that the law does not make criminal." *Id.* at 196. Other circuits have similarly found prejudice when a § 924 conviction or sentence is not "authorized by law" in light of invalidated predicates because a legally invalid conviction or sentence "certainly [creates] an 'actual and substantial disadvantage' of 'constitutional dimensions.'" *Snyder*, 871 F.3d at 1127–28 (quoting *Frady*, 456 U.S. at 170) (ACCA sentence enhancement); *see also Raines v. United States*, 898 F.3d 680, 687 (6th Cir. 2018) (same); *Garcia*, 811 F. App'x at 480 (§ 924(c) conviction).

The inverse of this principle is also true. Where a petitioner collaterally attacks a § 924(c) conviction solely on the ground that a predicate offense is invalid after *Davis*, the petitioner cannot show prejudice if the predicate qualifies as a crime of violence under the elements clause.[7] This is such a case. Contrary to Green's arguments, Fourth Circuit precedent establishes both that Hobbs Act robbery satisfies the elements clause and that the elements clause passes constitutional muster.

First, this Court has squarely held that Hobbs Act robbery falls within the scope of the elements clause because it "has as an element the use, attempted use, or threatened use of physical force against the person or property of another." *United States v. Mathis*, 932 F.3d 242, 263, 265–66 (4th Cir. 2019) (quoting 18 U.S.C. § 924(c)(3)(A)). The Hobbs Act defines robbery as the taking of personal property from another "by means of actual or

---

[7] Admittedly, this analysis shades into the merits of Green's § 2255 motion. But in cases where a petitioner challenges the legal status of § 924(c) predicate offenses, the prejudice analysis necessarily overlaps with the merits. *See McKinney*, 60 F.4th at 196.

threatened force, or violence, or fear of injury, immediate or future, to his person or property[.]"  18 U.S.C. § 1951(b)(1).  In *Mathis*, we rejected the argument that Hobbs Act robbery by "fear of injury" did not necessarily require "physical force."  932 F.3d at 265–66.  To reach that conclusion, we compared the Hobbs Act robbery statute's "fear of injury" element to the "intimidation" element in the federal bank robbery statute, 18 U.S.C. § 2113(a), and found "no material difference" between these elements.  *Id.* at 266.  Because we have held that federal bank robbery requires actual, attempted, or threatened physical force, *see United States v. McNeal*, 818 F.3d 141, 153 (4th Cir. 2016), it follows that Hobbs Act robbery does as well, *Mathis*, 932 F.3d at 266.  Accordingly, we were unpersuaded by the defendant's argument that Hobbs Act robbery could be committed via a threat to injure "intangible" property (e.g., shares of stock), which would not involve physical force.  *Id.* at 265–66.

Green claims our holding in *Mathis* is no longer tenable after the Supreme Court's 2022 decision in *Taylor*.  *See United States v. Banks*, 29 F.4th 168, 175 (4th Cir. 2022) (stating that a Panel of this Court may depart from a prior Panel decision that is inconsistent with a Supreme Court decision).  According to Green, *Mathis* "effectively adopted" the reasoning in decisions by the First and Second Circuits, which, in holding that Hobbs Act robbery satisfies the § 924(c) elements clause, found no "realistic probability" that the government would prosecute a defendant for Hobbs Act robbery in a case involving a threat to intangible property.  Opening Br. 18; *see Mathis*, 932 F.3d at 266 (citing *United States v. Garcia-Ortiz*, 904 F.3d 102, 109 (1st Cir. 2018); *United States v. Hill*, 890 F.3d 51, 60 (2d Cir. 2018)).  In *Taylor*, the Supreme Court clarified that the realistic probability test is

20

an inappropriate way to determine whether a predicate offense satisfies § 924(c)'s elements clause. 142 S. Ct. at 2024. The Court explained that the test "cannot be squared with [the clause's] terms," which "ask[] whether the government must prove, as an element of its case, the use, attempted use, or threatened use of force." *Id.*

Nothing about this Court's decision in *Mathis* conflicts with *Taylor*. First and foremost, *Mathis* never applied or even acknowledged the realistic probability test. Rather, it compared the text of the Hobbs Act robbery statute to the text of the elements clause, faithfully applying the categorical approach. *See* 932 F.3d at 266. *Mathis* merely cited *Garcia-Ortiz* and *Hill* to show that other circuits also had held that Hobbs Act robbery satisfies the elements clause, not to endorse every step of the First and Second Circuits' reasoning. *See Kholi v. Wall*, 582 F.3d 147, 152 n.5 (1st Cir. 2009) ("The mere fact that a court cites a case approvingly for one point does not imply the court's wholesale acceptance of each and every proposition for which the cited case stands."). In fact, the portions of *Garcia-Ortiz* and *Hill* that the *Mathis* Court cited do not contain any discussion of the realistic probability test. *See Mathis*, 932 F.3d at 266. And the Court also cited decisions from the Seventh and Eleventh Circuits that never mentioned the realistic probability test.[8] *See id.* (citing *United States v. Rivera*, 847 F.3d 847, 849 (7th Cir. 2017); *In re Fleur*, 824 F.3d 1337, 1340–41 (11th Cir. 2016)).

---

[8] Green also argues that the *Mathis* Court must have been relying on the realistic probability test because, at one point, it conceded that a defendant can commit Hobbs Act robbery by threatening injury to intangible property. But the *Mathis* Court did no such thing. Green relies on one line from the opinion, which remarked that neither the Hobbs Act robbery statute nor the elements clause "draws any distinction between tangible and (Continued)

Moreover, we have reaffirmed our holding in *Mathis* since the Supreme Court decided *Taylor*. We recently held that a district court properly instructed the jury that Hobbs Act robbery is a crime of violence under § 924(c)'s elements clause because the "instruction was consistent with [our] holding" in *Mathis*. *United States v. Ivey*, 60 F.4th 99, 116 (4th Cir. 2023). The defendant in *Ivey* argued that Hobbs Act robbery does not satisfy the elements clause because "putting someone in fear of injury . . . does not require an intentional threat of physical force." *Id.* at 117 (citation omitted). We explained that *Mathis* "forecloses this argument" and reiterated that Hobbs Act robbery "is a 'crime of violence' as that term is defined in § 924(c)(3)(A)." *Id.*; *see also Melaku*, 41 F.4th at 394 n.9 (also reaffirming the holding in *Mathis*).

Green also suggests that *Mathis* was wrongly decided on the merits, even if *Taylor* did not undermine its reasoning or holding. But even if we agreed, we "cannot overrule a decision issued by another panel." *McMellon v. United States*, 387 F.3d 329, 332 (4th Cir. 2004) (en banc).

Second, our precedent cannot support Green's argument that the elements clause is unconstitutionally vague. In contrast to the residual clause, we have stated that "there is no colorable argument that the elements-based categorical approach of § 924(c)(3)(A) suffers from any [] indeterminacy." *Simms*, 914 F.3d at 252. The Supreme Court has

---

intangible property." *Mathis*, 932 F.3d at 266. But that remark immediately followed the Court's conclusion that Hobbs Act robbery *does* require actual, attempted, or threatened physical force. *Id.* Because it is impossible to threaten physical force against intangible property, the Court's reference to intangible property was merely recognizing that neither Hobbs Act robbery nor the elements clause explicitly covers threats to such property.

22

similarly characterized the application of the elements clause as a "straightforward job" that does not require "an abstract judicial inquiry." *Taylor*, 142 S. Ct. at 2025.

Despite this clear guidance, Green asserts that the clause's reference to "physical force" raises vagueness problems, which he claims this Court's decision in *Melaku* reflects. In *Melaku*, we held that 18 U.S.C. § 1361, which prohibits willfully injuring or committing depredation of certain government property, is not a crime of violence under the § 924(c) elements clause. 41 F.4th at 388. The majority concluded that not all force capable of injuring property qualifies as "physical force" under the clause. Rather, the force must "involve the potential risk of pain or injury to *persons*."[9] *Id.* at 393 & n.4 (emphasis added).

Green contends that the *Melaku* majority's "potential risk of pain or injury" test introduces the same type of risk assessment that made the residual clause unconstitutional. We are unpersuaded. The majority's reasoning mirrors the Supreme Court's interpretation of the phrase "physical force against the person of another" in the ACCA elements clause. *See* 18 U.S.C. § 924(e)(2)(B)(i). The Supreme Court has held that the ACCA elements clause requires a level of force that is "capable of causing physical pain or injury to another person." *Stokeling v. United States*, 139 S. Ct. 544, 553 (2019) (quoting *Johnson v. United States*, 559 U.S. 133, 140 (2010)). *Melaku* adopted a near-identical definition for "physical force" in § 924(c): asking whether an offense necessarily involves force that creates a "potential risk of pain or injury to persons" is another way of asking whether that force is

---

[9] Citing *Mathis*, the *Melaku* majority explained that Hobbs Act robbery satisfies this definition of "physical force" because it "is a crime involving intimidation of a person." *Id.* at 394.

"capable of causing physical pain or injury to another person." Both are compatible with the categorical approach—and very different than the "substantial risk" language that doomed the residual clause, which asked courts to determine whether, in the abstract "ordinary case," an offense presents "some not-well-specified-yet-sufficiently-large degree of risk." *Dimaya*, 138 S. Ct. at 1215–16.

Any indeterminacy in the meaning of the elements clause's reference to "physical force" is an example of ambiguity, not vagueness. Under the interpretation the *Melaku* majority adopted, the elements clause requires force capable of causing physical pain or injury to a person, even when that force is directed at property. *See Melaku*, 41 F.4th at 393. Under a different interpretation, force is sufficient if it is capable of causing physical damage to property. *See id.* at 397 (Diaz, J., dissenting). Such ambiguity does not prevent the elements clause from "provid[ing] people of ordinary intelligence a reasonable opportunity to understand what conduct it prohibits" or "encourage[] arbitrary and discriminatory enforcement." *Hill v. Colorado*, 530 U.S. 703, 732 (2000). Courts can resolve the ambiguity by construing the statute, which is exactly what this Court did in *Melaku*.

In short, our precedent confirms that Hobbs Act robbery qualifies as a crime of violence under the elements clause of § 924(c). Because Green's conviction on Count 34 was predicated on conduct the law continues to make criminal and Green has not alleged any other form of harm, he cannot show that his procedural default caused him "actual and substantial" prejudice. *Murray*, 477 U.S. at 494. Even if we were to assume that Green was prejudiced by the default, these same reasons would preclude relief on the merits.

24

2.

Finally, Green cannot excuse his procedural default on account of actual innocence. The Supreme Court has explained that "'actual innocence' means factual innocence, not mere legal insufficiency." *Bousley*, 523 U.S. at 623. "[T]his standard is not satisfied by a showing that a petitioner is legally, but not factually, innocent." *United States v. Pettiford*, 612 F.3d 270, 282 (4th Cir. 2010) (quoting *United States v. Mikalajunas*, 186 F.3d 490, 494 (4th Cir. 1999)). In *Pettiford*, we held that the classification of an offense as a "violent felony" for purposes of the ACCA sentence enhancement is a "legal argument" that is "not cognizable as a claim of actual innocence." *Id.* at 284. We explained that "actual innocence applies in the context of habitual offender provisions only where the challenge to eligibility stems from factual innocence of the predicate crimes, and not from the legal classification of the predicate crimes." *Id.*

We do not need to resolve whether a challenge to the legal classification of a predicate underlying a § 924(c) or (j) conviction also fails to qualify as a claim of "actual innocence." Even if such a claim does so qualify, Green would not prevail. As we have established, Green's conviction on Count 34 remains legally valid after *Davis* because Hobbs Act robbery meets the elements clause's definition of a "crime of violence."

IV.

Green's § 2255 motion was timely, but his claim that Count 34 rested on § 924(c)'s unconstitutional residual clause was procedurally defaulted. Because our precedents establish that Hobbs Act robbery is a crime of violence under § 924(c)'s elements clause,

Green did not suffer prejudice as a result of his procedural default. Nor can he excuse his default on the basis of actual innocence. For these reasons, we affirm the dismissal of Green's § 2255 motion as to Count 34. However, we vacate the dismissal as to Count 29 and remand with instructions to vacate Green's conviction and sentence on that Count.

*AFFIRMED IN PART, VACATED IN PART, AND REMANDED*