**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

_____

**No. 23-1157**

_____

WHEELING POWER COMPANY - MITCHELL PLANT, as successor to Kentucky Power Company - Mitchell Plant,

         Plaintiff − Appellant,

     v.

LOCAL 492, UTILITY WORKERS UNION OF AMERICA, AFL-CIO,

         Defendant – Appellee.

_____

Appeal from the United States District Court for the Northern District of West Virginia, at Wheeling. John Preston Bailey, District Judge. (5:22−cv−00229−JPB)

_____

Argued: March 19, 2025                       Decided: July 25, 2025

_____

Before DIAZ, Chief Judge, GREGORY, Circuit Judge, and Jasmine H. YOON, United States District Judge for the Western District of Virginia, sitting by designation.

_____

Vacated and remanded with instructions by published opinion. Chief Judge Diaz wrote the opinion, in which Judge Gregory and Judge Yoon joined.

_____

**ARGUED:** Amy Marie Smith, STEPTOE & JOHNSON PLLC, Bridgeport, West Virginia, for Appellant. John R. Doll, DOLL, JANSEN & FORD, Dayton, Ohio, for Appellee. **ON BRIEF:** Bryan R. Cokeley, STEPTOE & JOHNSON PLLC, Charleston, West Virginia, for Appellant.

_____

DIAZ, Chief Judge:

Wheeling Power Company operates a power plant (the "Mitchell Plant") whose employees belong to a union ("Local 492"). A collective bargaining agreement recognizes Local 492 as the "exclusive bargaining representative for all the physical employees of the Mitchell Plant."[1]  J.A. 38.

Wheeling Power's predecessor-in-interest[2] owned and operated the Mitchell Plant when a fire broke out at an affiliated power plant, taking that plant offline temporarily. The closure coincided with a staffing shortage at the Mitchell Plant, so the predecessor entity briefly assigned employees from the offline plant to work at the Mitchell Plant.

These temporarily assigned employees weren't subject to Local 492's collective bargaining agreement. Unhappy with that arrangement, Local 492 filed a grievance with Wheeling Power's predecessor. The predecessor denied the grievance. The union then submitted the dispute to arbitration in accordance with the collective bargaining agreement.

The arbitrator found that assigning Mitchell Plant work to non–Local 492 employees violated the agreement. But the arbitrator directed the Mitchell Plant's owner (by this point, Wheeling Power) and the union to fashion a remedy on their own, with the arbitrator "retain[ing] jurisdiction" if the parties "reached [an] impasse over the remedy issue." J.A. 262. Rather than comply with that instruction, Wheeling Power sued to vacate

---

[1] The collective bargaining agreement was set to expire on May 31, 2021, but the parties agreed to extend it for a year. The parties' dispute arose during the extension term.

[2] The parties agree that the collective bargaining agreement binds Wheeling Power.

2

the arbitrator's liability award.  The district court upheld the award, and Wheeling Power appeals.

We've held that "[b]efore a court may review [an arbitrator's] award, . . . it must determine that the award is final and binding." *Peabody Holding Co. v. United Mine Workers*, 815 F.3d 154, 159 (4th Cir. 2016) (quotation omitted).  This rule is sometimes called the complete arbitration rule.  "[W]hen a labor arbitrator first decides liability questions and reserves jurisdiction to decide remedial questions at a later time," the arbitrator's decision isn't final.  *Id.* at 160.  In that situation, the complete arbitration rule, if properly invoked, requires a district court to dismiss the case.  *Id.*

We conclude that the complete arbitration rule applies here and that Wheeling Power's lawsuit was premature.  And although Local 492 forfeited reliance on the complete arbitration rule, we exercise our discretion to overlook the forfeiture.  So we vacate the district court's judgment and remand with instructions to dismiss the case without prejudice.

## I.

### A.

American Energy Power operated multiple subsidiaries, including the predecessor entity that owned the Mitchell Plant.  Another subsidiary of American Energy owned a separate plant called the Cook Coal Terminal.  In 2021, a fire at Cook Coal Terminal temporarily shut down the plant.  Meanwhile, the Mitchell Plant was short-handed, "losing folks through attrition, retirements, [and] health issues."  J.A. 164.

Mitchell Plant management believed "there was no way" it could handle the volume of work internally with the remaining employees it "had available at the time." J.A. 164. So management temporarily assigned eight Cook Coal Terminal employees to work at the Mitchell Plant.

These employees did the "[s]ame work that Local 492 members did," J.A. 120, and "were supervised directly by Mitchell Plant supervisors," J.A. 166. But the Cook Coal Terminal employees weren't subject to the collective bargaining agreement that governed employees belonging to Local 492 working at the Mitchell Plant. Both groups of employees worked "side by side" at the Mitchell Plant until early 2022. J.A. 256.

## B.

The collective bargaining agreement provides in Article 2 that company management "recognizes [Local 492] as the exclusive bargaining representative for all the physical employees of the Mitchell Plant." J.A. 38. The term "employees" includes "[a]ll production and maintenance employees," with some exceptions not relevant here. J.A. 38.

While the recognition provision in Article 2 makes Local 492 the Mitchell Plant's exclusive bargaining unit, Article 3(b) reserves to management "the right to assign or contract work to persons or organizations not represented by the Union." J.A. 41. Management's right is "limited only to the extent that" the assignment or contracting of such work can't "directly result in the layoff or discharge of any employee covered by [the bargaining agreement]." J.A. 41.

The collective bargaining agreement's grievance procedure prescribes several levels of internal dispute resolution, after which a failure to resolve "any grievance involving the

4

interpretation and application of a specific term or provision" of the agreement allows the parties to arbitrate. J.A. 80.

But the agreement limits the arbitrator's authority in several ways. Most pertinent here, if the parties dispute the company's "exercise" of its right to assign work to non-union members under Article 3(b), "the sole question for the arbitrator shall be whether" an employee was laid off or discharged because of the assignment of work. J.A. 41. It's undisputed that no Local 492 employees were laid off or terminated following the predecessor entity's decision to temporarily assign Cook Coal Terminal employees to the Mitchell Plant.

## C.

After Cook Coal Terminal employees were assigned to the Mitchell Plant, Local 492 filed a grievance invoking Article 2's recognition provision "and virtually every other provision of the contract." J.A. 201. It requested that Wheeling Power's predecessor "cease and desist from employing the [Cook Coal Terminal] workers at the Mitchel[l] Power Plant until they" joined Local 492 and became "covered by the collective bargaining agreement." J.A. 201.

The predecessor denied the grievance, resting on its right to assign work under Article 3(b). The union then demanded arbitration.

The arbitrator sided with the union. He concluded that Cook Coal Terminal employees "were indistinguishable from the Mitchell bargaining unit employees" and therefore "fit squarely within" the bargaining unit defined in Article 2. J.A. 260–61. He reasoned that the company's right to "assign or contract work," J.A. 41, applied to

5

"independent contractors" and their employees, who were readily distinguishable from "individuals in the bargaining unit." J.A. 261. So he concluded "that the Company violated the [collective bargaining] agreement by failing to apply it to the individuals brought in from [Cook Coal Terminal] to work at the Mitchell Power Plant." J.A. 262.

Viewing the liability question as "the easy part," the arbitrator found it "impossible" to fashion an appropriate remedy. J.A. 262. He "return[ed] the case to the Parties for their informed discussion on the matter of remedy," encouraging them to strive "for compromise and rough justice." J.A. 262. But the arbitrator "retain[ed] jurisdiction against the possibility that they may be unable to agree." J.A. 262.

## D.

Rather than heed the arbitrator's direction, Wheeling Power sued to vacate the arbitrator's award under the Labor Management Relations Act and the Federal Arbitration Act. The company also filed a separate motion to vacate the award under the Federal Arbitration Act.

Local 492 answered and counterclaimed to confirm the arbitration award. The union then filed a combined motion for summary judgment and memorandum in opposition to the company's motion to vacate the award. The company opposed the union's motion. Neither party asked the district court to consider whether the arbitration award was final.

The district court found for the union. The court didn't address whether the arbitration award was final. But, applying the highly deferential standard of review applicable to federal courts' consideration of arbitration awards, the court concluded that the arbitrator performed his job by issuing a decision that "draws its essence from the

6

contract" and didn't "impose his own ideas of fairness." *Wheeling Power Co.-Mitchell Plant v. Loc. 492, Util. Workers Union*, No. 22-CV-229, 2023 WL 1926897, at *6 (N.D.W. Va. Jan. 20, 2023). Accordingly, the district court upheld the arbitrator's award.

Wheeling Power appealed. In its opening brief, the company for the first time acknowledged that its lawsuit may have been premature under the complete arbitration rule. We ordered supplemental briefing on whether the rule applies and, if so, whether we should apply it in the first instance.

## II.

Federal courts have jurisdiction over disputes between an employer and a union for breach of a collective bargaining agreement, including disputes that lead to an arbitration award.[3] But "[b]efore a court may review the award, . . . it must determine that the award is 'final and binding.'" *Peabody*, 815 F.3d at 159 (quoting *Gen. Drivers, Loc. Union No. 90 v. Riss & Co.*, 372 U.S. 517, 519 (1963) (per curiam)). If it isn't, "a federal court asked to review an arbitrator's decision should refrain from doing so until the arbitrator has decided all facets of the dispute." *Id.* at 160.

The "issue of damages" must be "resolved in order for an award to be considered final." *Millmen Loc. 550, United Bhd. of Carpenters v. Wells Exterior Trim*, 828 F.2d

---

[3] The Labor Management Relations Act gives district courts jurisdiction to review certain contract disputes between unions and employers, 29 U.S.C. § 185(a), but the Federal Arbitration Act creates the procedural vehicle for review of arbitration awards, *see* 9 U.S.C. §§ 9, 10(a); *Badgerow v. Walters*, 596 U.S. 1, 4 (2022).

1373, 1376 (9th Cir. 1987). We have identified this exact situation, "when a labor arbitrator first decides liability questions and reserves jurisdiction to decide remedial questions at a later time," as a "straightforward application" of the complete arbitration rule. *Peabody*, 815 F.3d at 160. So, if Local 492 had timely raised the complete arbitration rule, the district court would have been bound to dismiss the case.

Resisting this conclusion, Wheeling Power argues that the complete arbitration rule is "satisfied" because the arbitrator completed the job assigned to him under the collective bargaining agreement. Appellant's Suppl. Br. at 12. In the company's view, the parties' dispute is over the assignment of Mitchell Plant work to Cook Coal Terminal employees under Article 3(b), and that provision limits the arbitrator's jurisdiction to the factual question of whether a union employee was laid off or discharged because of the assignment of work. With the parties in agreement that the answer to that question was no, the company insists that the arbitrator's job was at an end and his award was final.

But as our sister circuits have uniformly concluded, "[i]n order to be 'final,' an arbitration award must be *intended* by the arbitrators to be their complete determination of all claims submitted to them." *Michaels v. Mariforum Shipping, S.A.*, 624 F.2d 411, 413 (2d Cir. 1980) (emphasis added); *accord Anderson v. Norfolk & W. Ry. Co.*, 773 F.2d 880, 883 (7th Cir. 1985); *Millmen*, 828 F.2d at 1376–77; *Loc. 36, Sheet Metal Workers Int'l Ass'n v. Pevely Sheet Metal Co.*, 951 F.2d 947, 949 (8th Cir. 1992); *PG Publ'g, Inc. v. Newspaper Guild, Commc'ns Workers, AFL-CIO Loc. 38061*, 19 F.4th 308, 322–23 (3d Cir. 2021). We agree.

8

We've previously looked to the arbitrator's intent to determine an award's finality when considering the *functus officio* doctrine, under which arbitrators "lose their authority to act after making a final determination on a matter." *AO Techsnabexport v. Globe Nuclear Servs. & Supply GNSS, Ltd.*, 404 F. App'x 793, 799 (4th Cir. 2010). We see no reason the same inquiry wouldn't govern when applying the complete arbitration rule.

The arbitrator here didn't think his job was finished. Instead, he "retain[ed] jurisdiction against the possibility that" the parties couldn't agree on a remedy. J.A. 262. Since the arbitrator didn't "believe [his] assignment [wa]s completed, the award is not final." *McKinney Restoration Co. v. Ill. Dist. Council No. 1 of the Int'l Union of Bricklayers*, 392 F.3d 867, 872 (7th Cir. 2004). That Wheeling Power thinks otherwise is beside the point, for "[a]n arbitrator's ruling is not final if there is a substantive task left for the arbitrator to perform in the proceeding, even if not all of the parties agree that such further action is warranted."[4] *Orion Pictures Corp. v. Writers Guild of Am., W., Inc.*, 946 F.2d 722, 725 (9th Cir. 1991).

## III.

The wrinkle here is that Local 492 didn't raise the complete arbitration rule in the district court.

---

[4] There may be exceptions to the complete arbitration rule "in the most extreme cases." *Millmen Loc. 550*, 828 F.2d at 1375 (citation omitted). For example, a sister circuit has left open the possibility that irreparable harm caused by an inconvenient arbitration venue chosen in bad faith would warrant judicial review of a nonfinal arbitration award "to prevent a manifest injustice." *Aerojet-Gen. Corp. v. Am. Arb. Ass'n*, 478 F.2d 248, 251 (9th Cir. 1973). But Wheeling Power doesn't argue (and we don't find) that this case is extreme.

9

In *Peabody*, we held that the complete arbitration rule is "a prudential limitation on a court's authority to review a labor arbitrator's decision," not a jurisdictional limitation on district courts.[5] 815 F.3d at 159. Thus, the rule, like all non-jurisdictional rules, is "subject to ordinary principles of waiver and forfeiture." *See Edd Potter Coal Co. v. Dir., Off. of Workers' Comp. Programs*, 39 F.4th 202, 207 (4th Cir. 2022) (quotation omitted).

The union suggests that it didn't need to raise the complete arbitration rule until we requested supplemental briefing since the district court ruled in its favor. But prevailing on one issue below doesn't excuse a litigant's burden to preserve its arguments on another. *See Z.W. ex rel. Warner v. Horry Cnty. Sch. Dist.*, 68 F.4th 915, 919 (4th Cir. 2023) (prevailing party forfeited issues not timely raised).

We've no doubt that the union forfeited reliance on the complete arbitration rule by not alerting the district court that it had a complete defense to the company's lawsuit. *See United States v. Olano*, 507 U.S. 725, 733 (1993). But federal courts "have discretion to forgive any forfeiture." *Shinn v. Ramirez*, 596 U.S. 366, 375 n.1 (2022); *see Singleton v. Wulff*, 428 U.S. 106, 121 (1976). "[W]e possess the discretion under appropriate

---

[5] That the complete arbitration rule is prudential doesn't make it discretionary, if properly invoked. In *Peabody*, we explained that "judicial involvement" in incomplete labor disputes is "premature" and, faced with a premature suit, directed the district court to "return the dispute to the arbitrator." 815 F.3d at 156. Rather than remand to the district court for any discretionary determination, we signaled that the complete arbitration rule is a mandatory claim-processing rule. The Supreme Court has "reserved whether mandatory claim-processing rules may be subject to equitable exceptions," and, seeing no possibility for an equitable exception here, we do the same. *Hamer v. Neighborhood Hous. Servs.*, 583 U.S. 17, 20 n.3 (2017).

circumstances to disregard the parties' inattention to a particular argument or issue." *United States v. Holness*, 706 F.3d 579, 592 (4th Cir. 2013).

We can overlook a forfeiture "when the facts have been sufficiently developed to readily permit evaluation of an alternative legal theory" and when doing so "enhanc[es] the efficiency of the decisionmaking process and the conservation of scarce judicial resources." *Id.* When weighing these circumstances, we consider "the briefing presented, the fully developed record below, and the lack of any showing of unfairness or prejudice." *Brown v. Nucor Corp.*, 785 F.3d 895, 920 (4th Cir. 2015).

We choose to excuse the union's forfeiture. We've addressed the complete arbitration rule only once in *Peabody* and think it important to reiterate what we said there: a lawsuit to enforce or vacate an arbitration award is premature when the arbitrator decides liability but retains jurisdiction over the remedy.

Our decision to excuse the union's forfeiture bolsters the "policy rationales" that the complete arbitration rule serves, which mirror those of the final judgment rule applicable to appeals taken from district court rulings. *Peabody*, 815 F.3d at 159. Both rules avoid courts becoming "incessantly dragooned" into piecemeal litigation, and both rules "give the decision maker at each level a full and fair say as to the whole problem before passing the case on to the next stage of review." *Id.* at 160.

The complete arbitration rule also "mitigates the possibility of one party using an open courthouse door to delay the arbitration." *Id.* The rule therefore facilitates the efficient adjudication of arbitration disputes. Moreover, our decision to excuse Local 492's

11

forfeiture won't result in unfairness or prejudice, since the parties may return to court when the arbitrator's award becomes final.

We also find it unnecessary to remand this case to the district court to decide whether to apply the complete arbitration rule. Although "we generally prefer for the district court to consider an issue in the first instance, we have declined to remand in cases where 'no fact-finding is required, the issue has been fully briefed by each side, and the result is obvious.'" *United States v. Green*, 67 F.4th 657, 666 (4th Cir. 2023) (quoting *Bostick v. Stevenson*, 589 F.3d 160, 165 (4th Cir. 2009)).

That's the case here. By applying the complete arbitration rule ourselves, we avoid needlessly prolonging this dispute.

## IV.

For these reasons, we vacate the district court's judgment and remand with instructions to dismiss this case without prejudice.

*VACATED AND REMANDED WITH INSTRUCTIONS*

12